**INTERNATIONAL TRUCK AND ENGINE CORPORATION,**
Petitioner–Appellant,

v.

**COLORADO DEPARTMENT OF REVENUE, Auto Industry Division, and Transwest GMC Trucks, Respondents–Appellees,**

and

**Colorado Motor Vehicle Dealer Board, Appellee.**

No. 05CA1990.

Colorado Court of Appeals,
Div. I.

Feb. 8, 2007.

Kerr Brosseau Bartlett O'Brien, LLC, Dennis J. Bartlett, Denver, Colorado, for Petitioner–Appellant.

John W. Suthers, Attorney General, Ceri Williams, Assistant Attorney General, Denver, Colorado, for Respondent–Appellee Colorado Department of Revenue, Auto Industry Division and Appellee.

Cage Williams Abelman, P.C., James R. Cage, David A. Laird, Denver, Colorado, for Respondent–Appellee Transwest GMC Trucks.

Opinion by Judge FURMAN.

International Truck and Engine Corporation (International) appeals the order of the Colorado Motor Vehicle Dealer Board revoking International's "motor vehicle dealer" license. We reverse and remand.

## I. Background

International is a licensed motor vehicle manufacturer. International held a "motor vehicle dealer" license, first obtained in 1998, which was valid through June 30, 2006. During this time, International owned and operated a used motor vehicle dealership known as Denver Used Truck Center, through which International sold used trucks at retail.

In 2004, Transwest GMC Trucks filed a complaint with the Auto Division Section of the Department of Revenue alleging that International was a manufacturer engaged in owning, operating, or controlling a motor vehicle dealer in violation of § 12–6–120.5(1), C.R.S.2006.

Section 12–6–120.5(1) provides: "Except as otherwise provided in this section, no manufacturer shall own, operate, or control *any motor vehicle dealer* in Colorado" (emphasis added).

Conceding that it was prohibited from selling trucks under its current "motor vehicle dealer" license, International filed an application with the Board seeking to change its license class from "motor vehicle dealer" to "used motor vehicle dealer." The Board denied International's change in class application on the basis of § 12–6–120.5(1).

International requested a hearing, arguing that the Board's decision was contrary to law and denied International the opportunity to correct the violation by obtaining a "used motor vehicle dealer" license. At the hearing before the Board, International argued that it was entitled to hold a "used motor vehicle dealer" license and that the change in license class would correct any violation under § 12–6–120.5(1).

The Board issued a written order upholding its denial of the change in license class and revoking International's "motor vehicle dealer" license. The Board found that "any motor vehicle means new, used and wholesale," and that International, a licensed manufacturer, owned, operated, or controlled a "motor vehicle dealer" in violation of § 12–6–120.5(1).

## II. Section 12–6–120.5(1)

International contends that the Board improperly expanded the scope of § 12–6–120.5(1) by concluding the prohibition against motor vehicle manufacturers owning and operating a "motor vehicle dealer," which is defined in § 12–6–102(13), C.R.S.2006, prohibits manufacturers from owning and operating a "used motor vehicle dealer," which is separately defined under § 12–6–102(17), C.R.S.2006. We agree.

### A. Statutory Interpretation

We review statutory interpretation de novo. *Colo. State Bd. of Accountancy v. Paroske,* 39 P.3d 1283 (Colo.App.2001). In resolving an issue of statutory interpretation, "a court's essential task is to determine and give effect to the intent of the legislature." *Premier Farm Credit, PCA v. W–Cattle, LLC,* 155 P.3d 504, 513, 2006 WL 2828845 (Colo.App. No. 05CA0444, Oct. 5, 2006) (quoting *People v. Goodale,* 78 P.3d 1103, 1107 (Colo.2003)). To accomplish this task, we first examine the plain language of the statute itself. *People v. Dist. Court,* 713 P.2d 918 (Colo.1986). If the language is clear and unambiguous, we must interpret it as written. *People v. Goodale, supra; Premier Farm Credit, PCA v. W–Cattle, LLC, supra.*

When the General Assembly defines a term in a statute, that term must be given its statutory meaning. *R.E.N. v. City of Colorado Springs,* 823 P.2d 1359 (Colo. 1992); *Brennan v. Farmers Alliance Mut. Ins. Co.,* 961 P.2d 550 (Colo.App.1998). The definition is applicable to the term whenever it is used in the statute, except where a contrary intention plainly appears. *R.E.N. v. City of Colorado Springs, supra.*

■ We need not defer to the agency's interpretation unless a statutory term is reasonably susceptible of more than one interpretation, and the agency has employed its expertise to select a particular interpretation. *See Colo. State Bd. of Accountancy v. Paroske, supra.*

### B. Analysis

■ Section 12–6–102 provides, in pertinent part:

As used in this part 1, unless the context otherwise requires:

. . . .

(13) "Motor vehicle dealer" means a person who, for commission or with intent to make a profit or gain of money or other thing of value, sells, leases, exchanges, rents with option to purchase, offers, or attempts to negotiate a sale, lease, or exchange of an interest in new or new and used motor vehicles or who is engaged wholly or in part in the business of selling or leasing new or new and used motor vehicles, whether or not such motor vehicles are owned by such person.

. . . .

(17) "Used motor vehicle dealer" means any person who, for commission or with intent to make a profit or gain of money or other thing of value, sells, exchanges, leases, or offers an interest in used motor vehicles, or attempts to negotiate a sale, exchange, or lease of used and new motor vehicles or who is engaged wholly or in part in the business of selling used motor vehicles, whether or not such motor vehicles are owned by such person.

We conclude that § 12–6–120.5(1) is unambiguous. It prohibits a manufacturer from owning, operating, or controlling any "motor vehicle dealer." Because the legislature defined the term "motor vehicle dealer," and because the term "used motor vehicle dealer" is not mentioned in § 12–6–120.5(1), we further conclude this prohibition does not extend to owning, operating, or controlling a "used motor vehicle dealer."

Nevertheless, the Board contends that the word "any" before "motor vehicle dealer" in § 12–6–120.5(1) expands the meaning to in-

clude all classes of dealer licenses. *See Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher,* 22 P.3d 531 (Colo.App.2001); *Colo. State Bd. of Accountancy v. Raisch,* 931 P.2d 498, 500 (Colo.App.1996), *aff'd,* 960 P.2d 102 (Colo.1998) (holding "any" to be an all-inclusive term used synonymously with the terms "every" and "all"). For several reasons, we are not persuaded.

First, when the plain and ordinary meaning of the word "any" is applied in this instance, the statute clearly prohibits manufacturers from owning and operating every type of "motor vehicle dealer." The word "any" thus applies to all "motor vehicle dealers" included in this license class, such as those that sell cars, trucks, or trailers. *See* § 12–6–102(12), C.R.S.2006 (defining "motor vehicle").

■ Second, to use "any" to expand the definition of "motor vehicle dealer" would modify the legislature's separate definitions of "motor vehicle dealer" and "used motor vehicle dealer." *See* § 12–6–102. We are not at liberty to read additional terms into, or to modify, the plain language of a statute. *See Nat'l Farmers Union Prop. & Cas. Co. v. Estate of Mosher,* 22 P.3d 531 (Colo.App. 2000).

Third, had the legislature intended that the phrase "any motor vehicle dealer" encompass "used motor vehicle dealer," it could have said so plainly. *See State Farm Mut. Auto. Ins. Co. v. Stein,* 924 P.2d 1154 (Colo. App.1996), *aff'd,* 940 P.2d 384 (Colo.1997); *see also Subsequent Injury Fund v. Indus. Claim Appeals Office,* 131 P.3d 1224 (Colo. App.2006) (we presume the General Assembly understands the legal import of words and phrases).

The Board's reliance on *Freedom Newspapers, Inc. v. Tollefson,* 961 P.2d 1150 (Colo. App.1998), and *Gibbs v. Colorado Mined Land Reclamation Bd.,* 883 P.2d 592 (Colo. App.1994), *abrogated on other grounds by Shootman v. Dep't of Transp.,* 926 P.2d 1200 (Colo.1996), for the proposition that "any" modifies the term it precedes, is misplaced. Neither of these cases addresses whether the word "any" modified a term defined in a statute.

Because the language of § 12–6–120.5(1) and the defined terms used therein are clear,

and their meaning may be discerned with reasonable certainty, we need not resort to interpretive rules of statutory construction. *Mason v. People,* 932 P.2d 1377 (Colo.1997); *People v. Dist. Court, supra; see also Snyder Oil Co. v. Embree,* 862 P.2d 259 (Colo.1993).

Accordingly, we conclude the Board improperly expanded the scope of § 12–6–120.5(1) to prohibit International from owning and operating a used motor vehicle dealership.

In light of this conclusion, we need not address International's argument that the Board failed to find a willful violation before revoking the "motor vehicle dealer" license.

Because the Board's denial of International's request for a change in class application was based upon the Board's erroneous interpretation of § 12–6–120.5(1), its decision cannot stand. Accordingly, we reverse the Board's decision denying International's change of license class application. On remand, the Board shall reconsider that application. *See* § 24–4–104, C.R.S.2006.

In light of our holding, we need not address the parties' remaining contentions.

The order is reversed, and the case remanded for further proceedings consistent with this opinion.

Judge MÁRQUEZ and Judge ROY concur.