Opinion by JUDGE WEBB
¶ 1 In this dispute involving conservation easement (CE) tax credits, we granted the petition of defendant, Barbara Brohl, the Executive Director of the Colorado Department of Revenue (DOR), for interlocutory review of the trial court's orders in favor of plaintiffs,[1] holding that persons who purchased CE tax credits (transferees) from plaintiffs: are not within the statutory definition of "taxpayer" under section 39-22-522(1), C.R.S.2011; have no tax liability for deficiencies, interest, and penalties for the improper claim of a tax credit; need not be joined as necessary parties to this action under C.R.C.P. 19(a) ; and may be given notice of this proceeding by mail rather than being personally served under C.R.C.P. 4. Kowalchik v. Brohl, 2012 COA 25, ¶ 1, 277 P.3d 885 (Brohl I ).
¶ 2 Having received briefs on the merits and heard oral argument, we conclude that although under section 39-22-522(7)(j), C.R.S.2011, "[f]inal resolution of disputes regarding the tax credit between [DOR] and the tax matters representative ... shall be binding on transferees," the transferees are not necessary parties, and need not be served with summonses and complaints. However, contrary to the trial court, we further conclude that transferees are within the definition of "taxpayer," and thus may be liable for deficiencies, interest, and penalties, if disallowance of the CE credits they claimed is upheld in this action.
*685 I. Background
¶ 3 Plaintiffs donated CEs purportedly generating several million dollars of CE tax credits. They sold these credits to transferees, who claimed the credits on their state income tax returns or retained them for use against future tax liability. DOR disallowed all of the claimed tax credits. Plaintiffs filed an amended complaint in the district court appealing DOR's decision, acting as "tax matters representatives" (TMRs) under section 39-22-522(7)(i), C.R.S.2011, who are "responsible for representing and binding the transferees with respect to all issues affecting the credit."
¶ 4 Although this action will result in a judgment determining the tax liability, if any, of those transferees who claimed tax credits, plaintiffs did not join them as parties. DOR moved to dismiss under C.R.C.P. 12(b)(6) for failure to join indispensable parties or in the alternative to compel plaintiffs to join the transferees under C.R.C.P. 19(a). The trial court denied DOR's motion.
II. Law
¶ 5 C.R.C.P. 19(a) requires joinder of a person if "in his absence complete relief cannot be accorded among those already parties." See Potts v. Gordon, 34 Colo.App. 128, 132, 134, 525 P.2d 500, 503 (1974) ( " C.R.C.P. 19(a) is mandatory and requires the trial court to join persons falling within its provisions, if feasible."). Joinder of a nonparty may be ordered to avoid multiple litigation and provide the existing parties with complete relief in a single action. Bd. of Cnty. Comm'rs v. Roberts, 159 P.3d 800, 808 (Colo.App.2006) ; see also 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1604 (3d ed.2001).
¶ 6 Generally, due process limits the binding effect of judgments to persons who are parties to the action. See, e.g., Zaborski v. Colorado Dep't of Corr., 812 P.2d 236, 238 (Colo.1991) ; Weaver Constr. Co. v. Dist. Court, 190 Colo. 227, 232, 545 P.2d 1042, 1045 (1976). Personal service of a summons and complaint makes a person a party. Zaborski, 812 P.2d at 238 ; Weber v. Williams, 137 Colo. 269, 277, 324 P.2d 365, 369 (1958).
¶ 7 The parties have not cited any case, nor have we found one, involving a due process challenge to a similar statute that binds a nonparty to a judgment obtained by a statutory representative without requiring judicial scrutiny of the adequacy of the representation or allowing the nonparty to opt out of the litigation.
¶ 8 A party who acts under a statute is presumed to know all of its terms. See Paul v. Indus. Comm'n, 632 P.2d 638, 639 (Colo.App.1981) (claimant is presumed to have knowledge of contents of unemployment compensation statutes). Further, a "taxpayer is not obliged to avail himself of the privilege conferred; [but] if he does so, he takes it with the condition attached." Nuckolls v. United States, 76 F.2d 357, 360 (10th Cir.1935).
¶ 9 Where a nonparty has agreed to be represented, the nonparty will be bound by the judgment if the representative participated in the litigation. Restatement (Second) of Judgments § 41 (1982).[2] A representative "may be constituted as such through some transaction antedating the litigation wherein the representative is given authority to manage and safeguard interests of a beneficiary." Restatement § 41 cmt. a .
¶ 10 And in other "limited circumstances," a nonparty will be bound by a judgment where the nonparty "was adequately represented by someone with the same interests who [wa]s a party to the suit." Taylor v. Sturgell, 553 U.S. 880, 894, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (internal quotation marks and citation omitted); see also Goldsworthy v. Am. Family Mut. Ins. Co., 209 P.3d 1108, 1116 (Colo.App.2008) (concluding policyholders' attempted class action against insurer was precluded by two *686 denials of motion for class certification by other policyholders who had previously brought the same claims, made the same arguments, and employed the same attorneys).
¶ 11 Adequate representation will be found where the interests of the nonparty and party are aligned; "either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty;" and in some circumstances, the nonparty received prior notice of the original suit. Taylor, 553 U.S. at 900, 128 S.Ct. 2161 ; South Cent. Bell Tel. Co. v. Alabama, 526 U.S. 160, 168, 119 S.Ct. 1180, 143 L.Ed.2d 258 (1999). A "pre-existing substantive legal relationship," or "one in which parties to the first suit are somehow accountable to nonparties who file a subsequent suit raising identical issues," can create such an alignment of interests. Pelt v. Utah, 539 F.3d 1271, 1290 (10th Cir.2008) (citing Taylor, 553 U.S. at 900, 128 S.Ct. 2161 ). Qualifying relationships include assignee and assignor. Taylor, 553 U.S. at 894, 128 S.Ct. 2161 (citing Restatement § 55 ).
¶ 12 Applying these principles under substantially similar Fed. R. Civ. P. 19(a),[3] mandatory joinder is not required if the nonparties' interests are identical or substantially similar to those of a party who is participating fully in the litigation. See, e.g., Ohio Valley Envtl. Coal. v. Bulen, 429 F.3d 493, 504-05 (4th Cir.2005) ("A litigant may serve as a proxy for an absent party if the interests of the two are identical."); North Shore Gas Co. v. Salomon Inc., 152 F.3d 642, 648 (7th Cir.1998) (subsidiary of party company not a necessary party because the two companies' interests were "virtually identical" and the parent company's "motives and ability to defend" were the same as its subsidiary, leading to no possibility of prejudice to subsidiary (internal quotation marks and citation omitted)), overruled on other grounds by Envision Healthcare, Inc. v. PreferredOne Ins. Co., 604 F.3d 983, 986 n.1 (7th Cir.2010).[4]
¶ 13 In most contexts, a nonparty must receive prior notice of the litigation to be bound. Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 484-85, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (state action affecting a protected property interest "must generally be accompanied by notification of that action"). Notice is not required, however, where the nonparty has agreed to be represented. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1278 (9th Cir.1992) (citing Restatement § 41 ). Further, a judgment in prior litigation without notice to absent parties could bind them if the proceedings were " 'so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue.' " Richards v. Jefferson Cnty., Ala., 517 U.S. 793, 801-02, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) (quoting Hansberry v. Lee, 311 U.S. 32, 43, 61 S.Ct. 115, 85 L.Ed. 22 (1940) ).
III. Application
¶ 14 We first consider DOR's contention that the General Assembly intended to require transferees to be parties, and conclude that it did not. This conclusion does not answer the C.R.C.P. 19(a) inquiry because if due process precludes binding transferees to *687 judgments entered in their absence, joinder of transferees could still be required. Hence, we next consider whether the statutory procedure binding transferees requires that they be joined or served with summonses and complaints to avoid a due process violation. We conclude that it does not because by acquiring a CE credit and claiming it as a deduction, a transferee agrees to be represented by its TMR, and because the sale of CE tax credits creates a sufficient alignment of interests between transferees and TMRs, who understand that they are acting in a representative capacity.
A. The General Assembly Did Not Intend to Require Joinder of Transferees
¶ 15 Statutory interpretation is a question of law that we review de novo. Smith v. Executive Custom Homes, Inc., 230 P.3d 1186, 1189 (Colo.2010). We must adopt the construction that "best effectuates the intent of the General Assembly and the purposes of the legislative scheme." State v. Nieto, 993 P.2d 493, 501 (Colo.2000). "When construing a statute we look to the statutory design as a whole, giving effect to the language of each provision and section, harmonizing apparent conflicts, if possible." Univ. of Colorado v. Booth, 78 P.3d 1098, 1101 (Colo.2003). A court "should reject interpretations that cause parts of a statute to be superfluous, and should attempt to harmonize any potentially conflicting provisions." In re Regan, 151 P.3d 1281, 1290-91 (Colo.2007). We may not interpret a statute in a manner that produces an absurd result. People v. Cross, 127 P.3d 71, 74 (Colo.2006).
¶ 16 The General Assembly created a process whereby a judgment binding on a transferee would result, even if the transferee was not a party:
• As donor of an easement credit, the TMR "shall be responsible for representing and binding the transferees with respect to all issues affecting the credit." § 39-22-522(7)(i), C.R.S.2011.
• "Final resolution of disputes regarding the tax credit ... shall be binding on transferees." § 39-22-522(7)(j).
Because these provisions are unambiguous, reference to legislative history would be improper. Smith, 230 P.3d at 1190 ("When the meaning of a statute is clear based on a plain reading of the language, we do not consult legislative history.").[5]
¶ 17 Reading sections 39-22-522 and 39-22-522.5 together weighs against inferring a legislative intent that transferees must be parties. Section 39-22-522, as amended in 2005, provides for administrative review of disputes over CE credits, but lacks any provision requiring that transferees be joined in such proceedings. In 2011, the General Assembly added section 39-22-522.5, which provided detailed court procedures as an alternative to administrative review, but did not require participation by transferees. Had the General Assembly intended to require that transferees participate, it could have done so. See Vigil v. Franklin, 103 P.3d 322, 330 (Colo.2004) ("[H]ad the General Assembly intended to limit the preemption of landowner liability by retaining the open and obvious danger doctrine, it could have done so.").
¶ 18 Instead, the new section provided transferees with an absolute right to intervene. § 39-22-522.5(2)(f), C.R.S.2011. This provision shows that the General Assembly recognized and addressed the interest of transferees in court proceedings. The General Assembly also considered who must be a party to such proceedings, but provided that only the Executive Director of DOR "shall be deemed to be a party." § 39-22-522.5(2)(e), C.R.S.2011. These provisions also weigh against implying an intent to require that transferees be made parties. See Eichhorn v. Kelley, 56 P.3d 124, 126 (Colo.App.2002) ("The inclusion of certain items implies the exclusion of others.").
¶ 19 DOR's reliance on the following provisions of section 39-22-522.5 to infer a legislative intent that transferees be joined is unpersuasive:
*688 • The references to "equitable" and "fair" resolution in sections 39-22-522.5(1)(f) and (2)(q) would support mandatory joinder of transferees only were we to rely on the intermediate assumption that TMRs will not adequately represent transferees. Such an assumption is at odds with the legislative determination that the TMR "shall be responsible for representing and binding the transferees with respect to all issues affecting the credit." § 39-22-522(7)(i). For reasons discussed below concerning due process in representative litigation, the alignment of interests between TMRs and transferees further undercuts this assumption.
• DOR fails to explain why a TMR could not raise the confidentiality interest recognized in section 39-22-522.5(1)(e) on behalf of a transferee, a defense under section 39-22-522.5(2)(i) unique to a transferee, or a transferee's position concerning the validity and value of the CE and the related tax credit. Id . The suggestion that only a transferee could do so ignores use of the phrase "all issues" in section 39-22-522(7)(i).
• The disclosure obligation in section 39-22-522.5 (2)(j)(III)(C) -which applies to transferees, among others-is consistent with the responsibilities of a transferee who has elected to intervene.
• Section 39-22-522.5(2)(m)(II) provides for a complete determination of "the tax, interest, and penalties due and apportionment of such tax liability among persons who claimed a tax credit," which shall be final "as to any taxpayer, transferee, or other party." This reference to "transferee" is consistent with the use of "binding" in sections 39-22-522(7)(h) and 39-22-522(7)(i).
• Section 39-22-522.5(2)(m)(III) addresses proceedings at the third phase, which are "between and among the tax matters representative, transferees, and other persons claiming a tax credit." However, because DOR "shall not be required to participate in or be a party to this third phase," DOR has no interest in whether such proceedings could be final in the absence of an affected transferee.
¶ 20 In sum, the detail of section 39-22-522.5, coupled with the absence of any provision requiring that transferees be joined, supports our conclusion not to imply such a requirement. See People v. Benavidez, 222 P.3d 391, 394 (Colo.App.2009) ("[W]e must accept the General Assembly's choice of language and not add or imply words that simply are not there."). However, we could not construe sections 39-22-522 and 39-22-522.5 as precluding either mandatory joinder of transferees under C.R.C.P. 19(a) or notice to them by service of summonses and complaints, if due process required otherwise. See People v. Zapotocky, 869 P.2d 1234, 1240 (Colo.1994) (statute should be construed to avoid constitutional infirmities). Accordingly, we must consider whether the failure to join transferees would violate due process.
B. Due Process Does Not Require That Transferees Be Joined
¶ 21 CE credits, their transferability, and procedures to resolve disputes over them, are creations of statute. A transferee's decision to acquire a CE is voluntary. Once the credit has been claimed on a tax return, DOR could disallow the credit. See § 39-22-522(3.5)(a) (cross-referencing §§ 39 - 21 - 103 and 104, which address notices of deficiency and notices of rejection of a refund claim). In this event, under section 39-22-522.5(2) the TMR may waive administrative review and appeal the disallowance to district court, and under section 39-22-522(7)(i) the transferee will be bound by any determination against its TMR.
¶ 22 In light of these provisions, a transferee's election to purchase a CE credit and then claim the credit as a deduction is similar to a party's decision to enter into a contract in which the party agrees that in litigation arising from the contract, another party will represent its interests. However, because transferees do not make such an express agreement, we also consider adequacy of representation by TMRs.
¶ 23 The transfer of a CE credit creates a pre-litigation relationship between the TMR and its transferee, in which their interests are closely aligned in upholding the validity of the CE credit and the TMR is motivated *689 to defend the credit. (Some TMRs and transferees executed agreements stating that if DOR disallowed a CE credit, the transferee could seek indemnification from its TMR.)[6] Section 39-22-522(7)(i) informs TMRs that they are representing transferees, who will be bound by the outcome. And transferees have an absolute right to intervene. § 39-22-522.5(2)(f). Thus, the procedure is designed to provide for a full and fair consideration of transferees' issues.
¶ 24 Therefore, we conclude that due process does not require joinder of transferees under C.R.C.P. 19(a) in litigation where the transferee is represented by its TMR.[7]
C. Transferees Received Sufficient Notice
¶ 25 We need not decide whether notice by service of a summons and complaint on each transferee might be required because the parties agreed at oral argument that transferees whose claimed CE credits had been disallowed were mailed deficiency notices by DOR. Ward v. Douglas Cnty. Bd. of Comm'rs, 886 P.2d 310, 312 (Colo.App.1994) (mailing notice denying petition for tax abatement satisfied due process concerns where notice failed to reach petitioner only because he moved and failed to leave a forwarding address or other means of contacting him).
¶ 26 Further, the court's order provides for mailing notice of this proceeding to all transferees. Courts have "repeatedly recognized that mail service is an inexpensive and efficient mechanism that is reasonably calculated to provide actual notice." Tulsa Prof'l Collection Servs., 485 U.S. at 490, 108 S.Ct. 1340.
¶ 27 Therefore, we further conclude that allowing this action to proceed without service of a summons and complaint on each transferee who chooses not to intervene satisfies due process. Accordingly, we agree with the trial court's refusal to order mandatory joinder of transferees under C.R.C.P. 19(a) or service of summonses and complaints on them.
IV. A Transferee Is a Taxpayer
A. Jurisdiction
¶ 28 By granting the petition for interlocutory review in Brohl I, we exercised our discretionary jurisdiction under section 13-4-102.1, C.R.S.2011, over the questions arising from the trial court's interpretation of sections 39-22-522(1) and 39-22-522(9). Although we have resolved the C.R.C.P. 19(a) issue without relying on the trial court's interpretation of these sections, its decision is not moot because the interpretation would preclude collecting deficiencies from transferees who claimed CE credits. Hence, we address the court's interpretation, and conclude that transferees are taxpayers, who may be subject to deficiencies, interest, and penalties.
B. Discussion
¶ 29 The following provisions of section 39-22-522 are at issue:
(1) For purposes of this section, "taxpayer" means a resident individual or a domestic or foreign corporation subject to the provisions of part 3 of this article, a *690 partnership, S corporation, or other similar pass-through entity, estate, or trust that donates a conservation easement as an entity, and a partner, member, and subchapter S shareholder of such pass-through entity.
(9) Any taxpayer who claims a credit for the donation of a conservation easement contrary to the provisions of this section shall be liable for such deficiencies, interest, and penalties as may be specified in this article or otherwise provided by law.
¶ 30 To support the trial court's interpretation, plaintiffs make three assertions: first, section 39-22-522(9) limits liability for deficiencies, interest, and penalties to a "taxpayer," as defined in section 39-22-522(1) ; second, that definition of "taxpayer" does not include transferees; and, third, even if that definition does include transferees, under section 39-22-522(9) they are still not liable because only a donor, not a transferee, "claims a credit for the donation of a conservation easement ." (Emphasis added.)
1. Section 39-22-522(1)
¶ 31 As to the first assertion, we agree that the definition of "taxpayer" in section 39-22-522(1) applies to that term as used in section 39-22-522(9), which does not include a separate definition. See Int'l Truck & Engine Corp. v. Colorado Dep't of Revenue, 155 P.3d 640, 641 (Colo.App.2007) (where legislation defines a term, "[t]he definition is applicable to the term whenever it is used in the statute, except where a contrary intention plainly appears").
¶ 32 The second assertion turns on whether the phrase "that donates a conservation easement as an entity," in section 39-22-522(1), modifies the entire list of taxpayers. Giving effect to all words in the phrase, we conclude that it does not.
¶ 33 When interpreting a statute, we must consider rules of grammar and common usage, section 2-4-101, C.R.S.2011, but we may ignore obvious mistakes, such as in punctuation. See, e.g., Palmer v. Diaz, 214 P.3d 546, 556 (Colo.App.2009). From a grammatical and common usage perspective, application of the phrase "that donates a conservation easement as an entity" to the list in section 39-22-522(1) is unclear. Therefore, the section is ambiguous. See People v. Renfro, 117 P.3d 43, 49 (Colo.App.2004) (where words chosen by legislature are unclear in their common understanding, or capable of two or more reasonable constructions leading to different results, statute is ambiguous).
¶ 34 The list of taxpayers begins with "a resident individual." The definition of "individual" includes "a single human being." Webster's Third New International Dictionary 1152 (2002). Because the statutory list goes on to include various types of corporations and "a partnership," the context limits "resident individual" to natural persons. See Benuishis v. Indus. Claim Appeals Office, 195 P.3d 1142, 1146 (Colo.App.2008) (applying doctrine of noscitur a sociis, meaning that an unclear phrase should be determined from the words immediately surrounding it).
¶ 35 A natural person is not a corporation, partnership, estate, or trust. Hence, the phrase "that donates a conservation easement" can be applied to "resident individual" only by ignoring the words "as an entity." When interpreting a statute, however, a court cannot ignore any of its language. Comcast of California/Colorado, L.L.C. v. Express Concrete, Inc., 196 P.3d 269, 273 (Colo.App.2007).
¶ 36 Having determined that the phrase cannot apply to resident individuals, we consider the extent of its application to the remainder of the taxpayers listed in section 39-22-522(1). We further conclude that the phrase applies to entities whose income and losses "pass through," without tax consequences at that level, to the shareholders, members, or partners in the entity. Because such an entity does not pay tax on income,[8] it *691 would have no reason to acquire a CE credit. Instead, the entity would be a taxpayer, and thus subject to many other provisions of section 39-22-522, only if it donated a CE.
¶ 37 This interpretation is consistent with DOR regulations. See 1 CCR 201-1, Reg. 39 -22-522(3)(h) (precluding transfer of CE credit to pass-through entity). In matters of statutory interpretation, "we give great deference to an agency's interpretation of the statute, looking only to whether the agency's regulation is based on a permissible construction of the statute." Smith v. Farmers Ins. Exch., 9 P.3d 335, 340 (Colo.2000).
¶ 38 This interpretation strengthens from considering the evolution of section 39-22-522(1) :
• The initial wording of this section, when the statute did not permit transfer of CE credits, provided, " 'taxpayer' means a resident individual or a domestic or foreign corporation subject to the provisions of part 3 of this article." Ch. 247, sec. 1, § 39 -22-522, 1999 Colo. Sess. Laws 976. At that time, only a donor could be a taxpayer, and the categories of potential donors were limited.
• Two years later, after an intervening amendment that allowed CE credits to be transferred, this section was amended to add the phrase, "a partnership, S corporation, or other similar pass-through entity, estate, or trust that donates a conservation easement as an entity." Ch. 133 sec. 6, § 39-22-522(1), 2001 Colo. Sess. Laws 395. This language expanded the scope of "taxpayer" by adding to the categories of potential donors.
Thus, we agree with DOR that the phrase serves to include among taxpayers pass-through entities, such as partnerships and S corporations, as well as estates and trusts, but only as the donor of a CE, while "resident individuals" and other forms of corporations can also be taxpayers if they are transferees.[9]
¶ 39 Interpreting section 39-22-522(1) to exclude transferees from the meaning of "taxpayer" would be contrary to DOR's regulations, which provide that if a CE credit is disallowed, "the transferee will be held liable for the disallowed credit that was utilized, plus any applicable penalty and interest." 1 CCR 201-1, Reg. 39 -22-522(3)(f); see also 1 CCR 201-1, Reg. 39 -22-522(1)(a) (including transferees among taxpayers entitled to claim CE credits). Such an interpretation also raises at least the following four additional problems, as argued by DOR, which plaintiffs failed to address in their answer brief or at oral argument.
¶ 40 First, this interpretation contradicts the use of "taxpayer" in section 39-22-522(7), which provides in relevant part:
For income tax years commencing on or after January 1, 2000, a taxpayer may transfer all or a portion of a tax credit granted pursuant to subsection (2) of this section to another taxpayer for such other taxpayer, as transferee, to apply as a credit against the taxes imposed by this article....
(Emphasis added.) However, we must interpret a statute to "giv[e] effect to the language of each provision and section, harmonizing apparent conflicts." Booth, 78 P.3d at 1101.
¶ 41 Second, this interpretation renders the following provisions of section of 39-22-522 superfluous. See In re Regan, 151 P.3d at 1290-91 (a court "should reject interpretations that cause parts of a statute to be superfluous").
¶ 42 Under section 39-22-522(5)(b)(I),
if the amount of the tax credit allowed in or carried forward to any tax year pursuant to this section exceeds the amount of income tax due on the income of the taxpayer for the year, the taxpayer may elect to have the amount of the credit not used as an offset against income taxes in said income tax year refunded to the taxpayer.
*692 Section 39-22-522(7)(c), however, limits this language-"A transferee may not elect to have any transferred credit refunded pursuant to paragraph (b) of subsection (5) of this section." Unless a transferee was a taxpayer for purposes of seeking a refund under section 39-22-522(5)(b), the limitation on refunds in section 39-22-522(7)(c) would not have been necessary.
¶ 43 A similar analysis applies to section 39-22-522(6), which provides, "A taxpayer may claim only one tax credit under this section per income tax year; except that a transferee of a tax credit under subsection (7) of this section may claim an unlimited number of credits." Unless transferees were taxpayers, the "except" clause would be unnecessary.
¶ 44 This interpretation also renders a TMR's obligation to represent and authority to bind its transferees under section 39-22-522(7)(i), discussed above, without purpose. That obligation and authority includes "all issues affecting ... assessments or refunds." But if a transferee were not a taxpayer, the transferee would lack any interest in resolving assessments or refunds.
¶ 45 Third, this interpretation is at odds with the plain meaning of "taxpayer," which is "one who has paid or is subject to a tax." B. Garner, Black's Law Dictionary 1600 (9th ed.2009). A transferee is treated as one who pays taxes in sections 39-22-522(7)(d) ("[T]he taxpayer and the transferee shall file written statements with their income tax returns specifying the amount of the tax credit that has been transferred.") and 39-22-522(7)(e) ( "[T]he transferee shall be deemed to have used the credit to pay, in whole or in part, the income tax obligation imposed on the transferee under this article.").
¶ 46 Fourth, this interpretation leads to an absurd result. As indicated, section 39-22-522(7) permits the transfer of CE credits for use by transferees in reducing their income taxes. If such a transferee is not subject to deficiencies, interest, and penalties under section 39-22-522(9), then DOR could proceed only against the donor. However, after the transfer of the CE credit, the donor may have become insolvent, which would leave DOR without a remedy and the transferee who had claimed an invalid CE credit unjustly enriched. See § 2-4-201(1)(c), C.R.S.2011 (presumption that "a just and reasonable result is intended"); Cross, 127 P.3d at 74 ("We ... consider the consequences of a particular construction and avoid constructions that produce illogical or absurd results.").
¶ 47 Therefore, we reject the trial court's interpretation that the definition of "taxpayer" in section 39-22-522(1) excludes transferees.
2. Section 39-22-522(9)
¶ 48 According to plaintiffs' third assertion, even if a transferee is a "taxpayer" for purposes of both sections 39-22-522(1) and (9), nevertheless the transferee is not subject to liability under section 39-22-522(9) because only a donor can "claim a credit" for "the donation of a conservation easement." This assertion is unpersuasive, for three reasons.
¶ 49 First, section 39-22-522(9) applies to "any taxpayer," and does not include a new definition of "taxpayer." "Generally, when used in a statute, the adjective 'any' means 'all.' " People v. Owens, 219 P.3d 379, 384 (Colo.App.2009). Because we have concluded that "taxpayer" includes transferees, by its plain language section 39-22-522(9) subjects transferees to liability.
¶ 50 Second, section 39-22-522(2) allows for:
... a credit with respect to the income taxes imposed by this article to each taxpayer who donates during the taxable year all or part of the value of a perpetual conservation easement in gross created pursuant to article 30.5 of title 38, C.R.S., upon real property the taxpayer owns to a governmental entity or a charitable organization described in section 38-30.5-104(2), C.R.S.
Under section 39-22-522(7), "a taxpayer may transfer all or a portion of a tax credit granted pursuant to subsection (2) of this section to another taxpayer for such other taxpayer, as transferee, to apply as a credit against the taxes imposed by this article." And under section 39-22-522(6), "a transferee of a tax *693 credit under subsection (7) of this section may claim an unlimited number of credits." (Emphasis added.) See also Huber v. Kenna, 205 P.3d 1158, 1159-60 (Colo.2009) (multiple references to "claim a tax credit" for a CE). Thus, a transferee "claims a credit," under section 39-22-522(9).
¶ 51 Third, under section 39-22-522(2), that credit arises from donation of the CE. Because section 39-22-522(3.5)(a) permits DOR to reject, "in whole or in part, the appraisal value of the easement, the amount of the credit, or the validity of the credit," the transferee's claimed credit depends on the validity of the donation. Thus, the transferee's claim is "for the donation of a conservation easement" within the meaning of section 39-22-522(9), although the transferee was not the donor. Cf. Rocky Mountain Fuel Co. v. George N. Sparling Coal Co., 26 Colo.App. 260, 265-66, 143 P. 815, 818 (1914) (transferee acquires that which transferor possessed).
¶ 52 Accordingly, we conclude that a transferee is a taxpayer, within the meaning of section 39-22-522(1), and that under section 39-22-522(9), a transferee is subject to liability for deficiencies, interest, and penalties.
V. Conclusion
¶ 53 The denial of DOR's motion to dismiss for mandatory joinder of transferees is affirmed, as is the trial court's holding that transferees need not be served with summonses and complaints. The court's holding that a transferee is not a "taxpayer," subject to deficiencies, interest, and penalties, is reversed. The case is remanded for further proceedings consistent with this opinion.
JUDGE CASEBOLT and JUDGE GABRIEL concur.

Walter and Carolyn Kowalchik, Marshall T. and Nancy C. Riggs, Roger and Suzanne Walker, Stanley K. and Sharon Cairns Mann, Joshua Rabinowitz, Gillian Driscoll, Tract 1 LLC, Tract 2 LLC, Tract 6 LLC, Tract 16 LLC, Tract 17 LLC, Tract 18 LLC, and Tract 19 LLC.

Our supreme court has frequently cited the Restatement as persuasive authority. See, e.g., Stanton v. Schultz, 222 P.3d 303, 306 (Colo.2010) ("[W]e find that comment o to the Restatement (Second) of Judgments, section 27 (1982), provides the more applicable reasoning."); In re Water Rights of Elk Dance Colorado, LLC, 139 P.3d 660, 670 (Colo.2006) (Restatement (Second) of Judgments § 12 cmt. a ).

"Because the Colorado Rules of Civil Procedure are patterned on the federal rules, we may also look to the federal rules and decisions for guidance." Garrigan v. Bowen, 243 P.3d 231, 235 (Colo.2010).

The prospective inquiry under Fed.R.Civ.P. 19(a) and C.R.C.P. 19 (a), where a party urges mandatory joinder of a nonparty to avoid the risk of further litigation, differs from the retrospective inquiry in cases such as Taylor, 553 U.S. at 887-88, 128 S.Ct. 2161, where a nonparty seeks to avoid a judgment entered in its absence. A court making the prospective inquiry determines, among other things, whether representation of the nonparty's interests will be adequate, based on the current posture of the case. A court making the retrospective inquiry determines whether that representation was adequate, based on assessment of historical facts. See, e.g., Hoxworth v. Blinder, 74 F.3d 205, 207-08 (10th Cir.1996) (although bankruptcy trustee represented investors as to claims against insolvent firm, investors were not bound by settlement reached by trustee because a conflict of interest arising during the litigation rendered trustee's representation inadequate).

At oral argument, all parties agree that they had reviewed the legislative history and found it uninformative.

Courts have held that a transferor impliedly warrants the validity of the right transferred. See, e.g., White House Mountain Gold Mining Co. v. Powell, 30 Colo. 397, 399, 70 P. 679, 680 (1902) ("It has been held that the assignor of a chose in action impliedly warrants its validity, and that the claim is collectible."); Doenges Motors, Inc. v. Bankers Inv. Co., 369 P.2d 611, 613 (Okla.1962) ("[A]n assignor impliedly warrants that he has a right to pass to the assignee what his assignment purports to pass and, if he lacks title, he is liable to the assignee.... [T]he implied warranty of validity extends ... to collateral securities or rights which pass by the assignment as incidents.").

We do not suggest that refusal to mandate joinder, a decision made without input from the nonparty, necessarily precludes the nonparty from later disputing the judgment's binding effect for lack of adequate representation. However, because only mandatory joinder is presently before us, we express no opinion whether circumstances could arise in these proceedings that would permit a transferee to challenge the judgment entered against its TMR. 18A Wright, Miller & Cooper, Federal Practice and Procedure Jurisdiction 2d § 4454 (2002) ("[I]t is far from clear how far inadequate representation should defeat preclusion rather than expose the representative to liability for improper discharge of his duties.").

A pass-through entity is an entity where income and losses flow through, untaxed, to the respective members, owners, or partners of the entity and are then treated as income or loss of the member, owner, or partner on their respective tax returns. See, e.g., § 39-22-201, C.R.S.2011 (partners, not partnership, subject to tax); § 39-22-322, C.R.S.2011 (shareholders of S corporation, not S corporation, subject to tax).

The question whether the General Assembly could rationally exclude estates and trusts, which pay income taxes directly, from transferee status is not before us.