The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
September 29, 2022

## 2022COA112

**No. 21CA0183, *Marriage of DePumpo* — Family Law — Dissolution — Spousal Maintenance — Child Support — Imputed Income — Rental Property Income — Ordinary and Necessary Expenses**

In this dissolution of marriage proceeding, a division of the court of appeals addresses two issues of first impression: (1) whether gains in an investment account awarded as part of the property division constitute "income" for maintenance and child support purposes; and (2) whether the calculation of rental income for child support and maintenance purposes excludes all depreciation. The division first holds that unrealized gains on an investment portfolio do not constitute "gross income" for child support and maintenance purposes, although in some

circumstances growth in an investment account may be considered under equitable principles. Second, the division holds that, under sections 14-10-114(8)(c)(III)(B) and 14-10-115(5)(a)(III)(B), C.R.S. 2021, the "accelerated component of depreciation expenses" is explicitly excluded as an "ordinary and necessary expense" when calculating a party's rental income.

COLORADO COURT OF APPEALS      **2022COA112**

---

Court of Appeals No. 21CA0183
Larimer County District Court No. 18DR30477
Honorable Juan G. Villaseñor, Judge

---

In re the Marriage of

Sarah Louise Schaefer, f/k/a Sarah DePumpo,

Appellant,

and

Timothy John DePumpo,

Appellee.

---

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division A
Opinion by CHIEF JUDGE ROMÁN
Martinez* and Graham*, JJ., concur

Announced September 29, 2022

---

The Harris Law Firm, PLLP, Katherine O. Ellis, Denver, Colorado, for Appellant

Aitken Law, LLC, Sharlene J. Aitken, Denver, Colorado, for Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2022.

¶ 1     Sarah Louise Schaefer, formerly known as Sarah DePumpo (wife), appeals the district court's maintenance and child support awards, and in particular the court's income calculations, entered in connection with the dissolution of her marriage to Timothy John DePumpo (husband).  As matters of first impression, wife asks us to consider (1) whether the unrealized capital gains on an investment account awarded as part of the property division constitute "income" for maintenance and child support purposes; and (2) whether the calculation of rental income, required by statutes for child support and maintenance purposes, excludes all depreciation.  We say "no" to both considerations.

¶ 2     Our conclusions lead us to reverse the judgment and remand the case to the district court for it to recalculate the parties' incomes and enter new maintenance and child support awards.  We also direct the court on remand to consider wife's request for appellate attorney fees under section 14-10-119, C.R.S. 2021.

## I.    Background Facts

¶ 3     The parties had a fifteen-year marriage, during which husband was the source of income through his ownership of several businesses.  The income the parties received from the businesses

1

allowed them to amass substantial investment accounts, including a TD Ameritrade account, and purchase several real properties, many of which were used as rentals.

¶ 4 By agreement of the parties, wife stayed home during the marriage to care for the parties' four children. Wife last worked outside the home in 2007, although she sometimes helped husband with his businesses. At the time of the 2020 permanent orders hearing, wife was enrolled in an online program to earn a master's degree in library science.

¶ 5 As its permanent orders, the court awarded husband $6,703,173.22 of the marital estate. Husband received all the real properties, including the rental properties. The remaining $2,782,365.80, which included the TD Ameritrade investment account, went to wife. To equalize this uneven division, the court ordered husband to pay wife $1,960,403.71.

¶ 6 For maintenance and child support, the court calculated husband's monthly income at $57,662 and wife's at $19,666. The court found that certain factors, such as husband's history as the family income provider and the parties' high standard of living, entitled wife to a monthly maintenance award while she obtained

her master's degree.  The court awarded wife $5,000 per month for forty-eight months (the duration of her graduate school program), citing her receipt of substantial liquid assets, current income, and ability to increase her earnings upon graduation.  The court's child support calculations resulted in an order for wife to pay $132 per month to husband.

## II.     The Income Calculations

¶ 7     Wife contends that the court miscalculated both parties' incomes for maintenance and child support purposes.  As mentioned above, wife raises two contentions: First, she argues that the court erroneously included the unrealized capital gains on the TD Ameritrade account as part of her income.  Second, she argues that the court erroneously included depreciation expenses associated with the rental properties when calculating husband's income.  For the following reasons, we reverse both parties' income calculations and remand the issue for further consideration.

### A.     Standard of Review

¶ 8     We review maintenance and child support orders for an abuse of discretion.  *In re Marriage of Tooker*, 2019 COA 83, ¶ 12.  We will not disturb the district court's factual findings unless they are

clearly erroneous and unsupported by the record.  *In re Marriage of Salby*, 126 P.3d 291, 298 (Colo. App. 2005).  We review de novo whether the court applied the proper legal standard.  *Tooker*, ¶ 12.

### B.    Wife's Income

#### 1.    Additional Facts

¶ 9    Wife does not dispute on appeal the court's finding that she could earn $3,000 per month.  However, she disputes that the $16,666 in unrealized monthly gains reflected in the TD Ameritrade account should be imputed to her as additional income.

¶ 10    At the hearing, husband hired an expert to calculate the historical returns on the TD Ameritrade account.  The expert first calculated the historical, long-term returns on stock accounts, using the S&P 500 and similar returns on a mixed portfolio of stocks and bonds, using Vanguard.  He determined that the S&P 500 averaged a 9.5% return rate over 91 years and Vanguard averaged a 7.8% rate over 91 years.  The expert then calculated short-term returns, opining that a party could earn a 5% return in the stock market "without working too hard."

¶ 11    Next, the expert looked at the parties' TD Ameritrade account, concluding that it averaged a 15.32% return rate over 10 years.

The expert acknowledged that the returns on the TD Ameritrade account varied from month to month and that his historical analysis was not indicative of future returns. But the expert testified that the account balance grew every year and did not deplete. The expert did not distinguish between unrealized capital gains and dividends, interest, realized capital gains, and other "returns," but included unrealized capital gains as "returns."

¶ 12    Finally, the expert calculated the specific amount of returns that a hypothetical $4,000,000 portfolio of stocks and bonds could expect to each generate under the four percentages stated above.[1] The expert established that a 5% return rate on that hypothetical portfolio would generate $200,000 per year ($16,666 per month), a 7.8% rate would generate $312,000 per year ($26,000 per month), a 9.5% rate would generate $380,000 per year ($31,666 per month), and a 15.32% rate would generate $612,800 per year ($51,066 per month).

---

[1] Although the expert calculated the specific amount of returns on a hypothetical $4,000,000 portfolio of stocks and bonds, the court valued the parties' TD Ameritrade account at $2,199,506.07.

¶ 13    The court found the expert's testimony credible.  It found that the TD Ameritrade account could generate between $16,666 and $51,066 per month in returns.  The court adopted the lowest return amount of $16,666 and imputed it to wife as part of her monthly income determination.

### 2.    Unrealized Capital Gains in an Investment Account Are Not Income

¶ 14    We conclude that the court erred by including in wife's income calculation the $16,666 in returns on the TD Ameritrade account.  We hold that unrealized capital gains in an investment account are not income for maintenance and child support purposes.

¶ 15    A party's gross income for child support and maintenance purposes means "income from any source."  § 14-10-114(8)(c)(I), C.R.S. 2021; § 14-10-115(5)(a)(I), C.R.S. 2021.  "Income from any source" includes dividends, interest, and capital gains. § 14-10-114(8)(c)(I)(F), (K), (N); § 14-10-115(5)(a)(I)(F), (K), (N). "Income from any source" also includes the amount of income an asset generates or even the principle of the asset if it is used as income.  *In Interest of A.M.D.*, 78 P.3d 741, 746 (Colo. 2003); *In re*

*Marriage of Bregar*, 952 P.2d 783, 786 (Colo. App. 1997); *In re Marriage of Armstrong*, 831 P.2d 501, 503 (Colo. App. 1992).

¶ 16    However, neither the maintenance nor child support statute defines whether unrealized gains in an investment account constitute "income." And no Colorado cases have addressed this point. So, we look at the few out-of-state rulings on this issue before turning to analogous Colorado cases.

¶ 17    Cases in New York hold that the unrealized increase in value of an investment account is "paper only" income and should be excluded when determining income for the purposes of calculating child support. *See Cupkova-Myers v. Myers*, 880 N.Y.S.2d 736, 737-38 (App. Div. 2009) (reversing magistrate's finding that the father's income for child support should include the $96,801.54 "change in investment value" of his investment accounts); *Gluckman v. Qua*, 687 N.Y.S.2d 460, 462 (App. Div. 1999) (hearing examiner should not have imputed the $87,937 increase in the father's stock portfolio as income for child support).

¶ 18    Arkansas cases similarly conclude that the increase in a stock portfolio is not income for child support or maintenance purposes unless the increase can be accessed and used by the party. *See*

7

*Dare v. Frost,* 2018 Ark. 83, at 6-7, 540 S.W.3d 281, 284-85 (affirming circuit court's order that father's income must include the funds he received from his investment account but not the unrealized increase in the portfolio); *Grimsley v. Drewyor,* 2019 Ark. App. 218, at 22, 575 S.W.3d 636, 648 (the wife's stock certificate and investment account did not constitute income for maintenance purposes because she had not received money from them).

¶ 19      Analogous Colorado cases generally agree that an unrealized compensation source not expressly defined by the maintenance and child support statutes is only "income" if it is available to the party to meet living expenses or to increase their standard of living.  *See A.M.D.,* 78 P.3d at 746 (the principal of a monetary inheritance is income only if the recipient uses it as a source of income to meet existing living expenses or increase their standard of living); *In re Parental Responsibilities Concerning N.J.C.,* 2019 COA 153M, ¶ 22 (deferred compensation is income only if the parent has the ability to use it to pay expenses); *Tooker,* ¶¶ 9-10 (tuition assistance and book stipend paid directly to a college are not income because they are not available to the parent for daily living or discretionary expenses); *In re Marriage of Davis,* 252 P.3d 530, 535 (Colo. App.

8

2011) (employer contributions to a 401(k) account and health insurance plans are not income unless the employee can receive them as wages and use them for general living expenses); *In re Marriage of Mugge,* 66 P.3d 207, 211 (Colo. App. 2003) (employer's pension contributions are not income until the funds are distributed and the employee can use the amounts as wages).

¶ 20    We are persuaded that the unrealized, "paper only" gains in an investment account are not income for maintenance and child support purposes unless the gains are realized and therefore can be used to meet living expenses, pay discretionary expenses, or increase the recipient's standard of living.

¶ 21    Here, there was no evidence that the parties ever received income from the TD Ameritrade account during the marriage.  The evidence showed only that the TD Ameritrade account had grown and had significant income-earning potential.  But there is an appreciable difference between what an account provides to a party as actual income and what it is capable of providing if invested differently.  On remand, the court must endeavor to differentiate between these two things to determine what portion, if any, of the TD Ameritrade account is income to wife consistent with the

principles outlined above.  *See Miller v. Miller*, 734 A.2d 752, 760 (N.J. 1999) ("The calculation of imputed income from investments is equally within our courts' capabilities.").  *But see Clark v. Clark*, 779 A.2d 42, 47 (Vt. 2001) ("To require courts in every case to carefully examine an investment account and determine which stocks are producing income and which are not would be an overly burdensome task.").

¶ 22    Although unrealized gains in an investment account are not income, maintenance and child support are inherently equitable determinations, and the court has discretion to make those awards based on the specific facts of the case.  *See* § 14-10-114(3)(c) (when considering the amount and duration of an award, the court may consider any other factor that it deems relevant); § 14-10-114(3)(e) (the maintenance guidelines are not presumptive, and the court has discretion to determine an award "that is fair and equitable to both parties based upon the totality of the circumstances"); § 14-10-115(8)(e) (the child support guidelines are rebuttable and the court may deviate from the guidelines and schedule "where its application would be inequitable, unjust, or inappropriate"); *see also A.M.D.*, 78 P.3d at 745 (the child support statute empowers the

court to deviate from the guidelines and increase or reduce the parents' gross incomes based on the facts of a case); *In re Marriage of Nelson*, 2012 COA 205, ¶ 23 (maintenance is determined by a discretionary balancing of factors).

¶ 23 Giving the court discretion to make these determinations is particularly important where the facts may indicate that a party is attempting to use an investment strategy to shield income to avoid a maintenance or child support obligation. *See, e.g.*, *Kay v. Kay*, 339 N.E.2d 143, 146 (N.Y. 1975) (a party's investment strategy may not be a basis for a party to place a possible source of income "off limits"); *see also Mugge*, 66 P.3d at 212 ("[A] parent cannot limit his or her child support obligation by a voluntary decision to avoid income that, if realized, would clearly constitute gross income for child support purposes."). Even so, the statutes' grant of discretionary authority does not give the court carte blanche to create income "where none, in fact, exists." *See In re Marriage of Destein*, 111 Cal. Rptr. 2d 487, 495 (Ct. App. 2001). Here, the court considered unrealized gains as income rather than exercising its discretionary authority to determine whether the investment

11

strategy limited child support or maintenance obligations to an extent that was inequitable, unjust, or inappropriate.

¶ 24    Accordingly, we reverse the calculation of wife's income and remand for the court to recalculate it as announced above. Because the court was presented with little to no evidence about the specific TD Ameritrade portfolio, the court may have to allow the parties to present additional evidence on remand to allow it to determine whether wife receives any actual income from the TD Ameritrade portfolio.

## C.    Husband's Income

¶ 25    Wife contends that the court erred by reducing husband's rental income by including depreciation expenses.  Ultimately, we conclude that more specific findings are required on reducing the rental income by depreciation.  We therefore reverse the calculation of husband's income and remand for further proceedings.

### 1.    Additional Facts

¶ 26    As noted, husband received the rental properties.  At the hearing, he provided the court with evidence showing each rental property's rental rate as well as the associated depreciation amount.  Husband wanted the court to include all depreciation for

each property when determining his net monthly rental income. Wife argued that the court should not consider any depreciation.

¶ 27 The court found that the depreciation in excess of the income husband earned on the rentals would not be included in his income calculation but that all other depreciation would be allowed.

### 2. The Court's Statutory Application

¶ 28 Under the maintenance and child support statutes, "income" includes income from rents. § 14-10-114(8)(c)(I)(J); § 14-10-115(5)(a)(I)(J). Income from rental property means gross receipts minus "ordinary and necessary expenses" required to produce such income. § 14-10-114(8)(c)(III)(A); § 14-10-115(5)(a)(III)(A). "'Ordinary and necessary expenses' . . . does not include amounts allowable by the internal revenue service for the accelerated component of depreciation expenses or investment tax credits or any other business expenses determined by the court to be inappropriate for determining gross income." § 14-10-114(8)(c)(III)(B); *see also* § 14-10-115(5)(a)(III)(B) (nearly identical definition). "Ordinary and necessary expenses" also do not include deductions for expenses in excess of income produced. *In re Marriage of Eaton,* 894 P.2d 56, 60 (Colo. App. 1995).

¶ 29     The parties dispute whether all forms of depreciation should

be excluded as an "ordinary and necessary expense," or whether

only "accelerated depreciation" is excluded.  One Colorado case

addresses section 14-10-115(5)(a)(III)(B), and no cases address

section 14-10-114(8)(c)(III)(B).  The lone Colorado case, *Eaton,*

considered only whether to include as part of a party's income the

losses he incurred in excess of his income from rental property.

894 P.2d at 60 (addressing child support).  The division was not

asked to and did not consider the specific issue before us.  Thus,

*Eaton* is not helpful to us.  Moreover, despite the statutory language

referring to the expenses allowable by the Internal Revenue Service,

we are not guided by definitions that may be used for federal or

state income tax purposes.  *See Armstrong,* 831 P.2d at 503 (a

source of income under the child support guidelines is not

determined by other definitions that may be used for federal or

state income tax purposes).

¶ 30     In determining the meaning of the statutes, we engage in a

plain language analysis and give effect to the statutory terms

according to their commonly understood and accepted usage.  *See*

*People in Interest of J.R.T.*, 55 P.3d 217, 219 (Colo. App. 2002), *aff'd sub nom. People v. Martinez*, 70 P.3d 474 (Colo. 2003).

¶ 31     "Depreciation" simply means a "loss of value."  Webster's Third New International Dictionary 606 (2002).  "Accelerated depreciation" means "depreciation of assets at a higher rate than that normally assigned to cover use and exhaustion."  *Id.* at 10; *see also* Black's Law Dictionary 555 (11th ed. 2019) (The "accelerated depreciation method" is "[a] depreciation method that yields larger deductions in the earlier years of an asset's life and smaller deductions in the later years.").

¶ 32     The plain language of sections 14-10-114(8)(c)(III)(B) and 14-10-115(5)(a)(III)(B) excludes only the "accelerated component of depreciation expenses" — that is, the component of depreciation or loss of value that occurs at a higher rate than normal.  The statutes are silent as to whether all depreciation expenses should be excluded.  If the legislature had intended to exclude *all* depreciation expenses from this calculation, it could have said so.  We are not at liberty to read different terms into the plain language of these statutes.  *See Int'l Truck & Engine Corp. v. Colo. Dep't of Revenue,* 155 P.3d 640, 642 (Colo. App. 2007).

¶ 33    Nor are we at liberty to disregard language in a statute; rather, we must construe the statutory language as the legislature enacted and assume that the legislature did not choose words idly. *Pisano v. Manning*, 2022 COA 22, ¶ 25.

¶ 34    Because the district court made no findings explaining why it considered all depreciation on the rentals to be an ordinary and necessary expense, we reverse the calculation of husband's income. On remand, the court shall make factual findings concerning the type of the depreciation associated with husband's rentals (i.e., whether the depreciation is accelerated) before it concludes whether the depreciation is an ordinary and necessary expense. As per *Eaton*, the court may not include in husband's rental income calculation the depreciation that exceeds the rental income received. *See* 894 P.2d at 60.

¶ 35    The court has discretion on remand whether to take new evidence on this issue.

III.    The Fairness of the Maintenance and Child Support Awards

¶ 36    The recalculation of the parties' incomes will require the court to enter new maintenance and child support orders. Therefore, we

decline to consider wife's contention regarding the fairness of the maintenance award.

## IV. The Parties' Attorney Fees Requests

### A. Wife's Request

¶ 37     Wife requests an award of her attorney fees under section 14-10-119. We direct the court to consider this request on remand. *See* C.A.R. 39.1.

### B. Husband's Request

¶ 38     We deny husband's request for attorney fees under section 13-17-102(2), C.R.S. 2021. Given our disposition, wife's appeal was not frivolous.

¶ 39     Further, husband is not entitled to his costs on appeal. *See* C.A.R. 39(a)(4) (if a judgment is reversed, costs are taxed against the appellee).

## V. Conclusion

¶ 40     The judgment is reversed, and the case is remanded to the district court for it to recalculate both parties' incomes, enter new maintenance and child support orders, and consider wife's appellate attorney fees request.

¶ 41 The court must consider the parties' current financial circumstances when recalculating the parties' incomes. *See In re Marriage of Wright*, 2020 COA 11, ¶ 24. As well, the court's new maintenance and child support orders must include sufficiently explicit factual findings that will give us a clear understanding of the basis for the orders. *See In re Marriage of Gibbs*, 2019 COA 104, ¶ 9.

¶ 42 The existing maintenance and child support orders will remain in place pending the entry of new orders.

JUSTICE MARTINEZ and JUDGE GRAHAM concur.