Opinion by JUDGE FREYRE
¶ 1 In this conservation easement (CE) tax credit case involving both a donor and a transferee, we are asked to decide whose tax claim triggers the four-year statute of limitations under §§ 39-21-107(2) and *207 39-22-522(7)(i), C.R.S. 2006[1] , a question left unresolved by another division of this court in Markus v. Brohl , 2014 COA 146, 412 P.3d 647, 2014 WL 5369981. Plaintiffs, John and Debra Medved (Medveds), appeal the district court's denial of their motion for summary judgment and its finding that defendant, Colorado Department of Revenue (Department), timely filed its notice of deficiency and disallowance. Relying on Markus 's reasoning and holding that § 39-22-522(7)(i), C.R.S. 2006 treats the donor and the transferee as one entity in all matters and that the first tax claim filed triggers the running of the statute of limitations, we reverse and remand for the dismissal of this action.
I. Background
¶ 2 On March 30, 2006, the Medveds purchased a CE tax credit on a forty-acre parcel of property located in Jackson County for $104,000 from Whites Corporation (Whites Corp.). The appraised value of the tax credit was $130,000. For tax purposes, Whites Corp. was the CE donor and the Medveds were the CE transferees.
¶ 3 On October 23, 2006, the Medveds filed their 2005 Colorado Individual Tax Return Forms 104 and 1305. They claimed a $130,000 income tax credit based on the CE. Attached to their tax return were numerous documents related to the CE, including the legal description of the property subject to the easement, the identity of the grantor and donor of the easement, the amount of the tax credit claimed, and a copy of the appraisal provided by Whites Corp.
¶ 4 On October 30, 2007, Whites Corp. filed a 2005 Form 112, Colorado State C Corporation Income Tax Return. Whites Corp. claimed a $260,000 income tax credit based on the same CE.
¶ 5 On March 4, 2011, the Department issued a notice of disallowance to Whites Corp. and the Medveds, disallowing the CE tax credit in its entirety. The Medveds appealed directly to the district court and argued that the notice of disallowance was barred by the four-year statute of limitations under § 39-21-107(2), C.R.S. 2006.[2] The Department, relying on the statutory language and a Department of Revenue regulation, argued that the Medveds and Whites Corp. were subject to the same statute of limitations that was triggered when the donor filed its tax return under § 39-22-522(7)(i), C.R.S. 2006.
¶ 6 Interpreting § 39-22-522(7)(i), C.R.S. 2006, the district court found that the donor (Whites Corp.) and the transferee (Medveds) were a single entity; that they were bound as to all issues concerning the tax credit, including the statute of limitations; and that the donor's tax claim triggered the four-year statute of limitations. Therefore, because Whites Corp. filed its tax return on October 30, 2007, the Department's notice of disallowance issued on March 4, 2011, was within the statute of limitations.
II. Conservation Easements
¶ 7 A CE "is a permanent restriction that runs with the land for the purpose of protecting and preserving the land in a predominantly natural, scenic, or open condition." Kowalchik v. Brohl , 2012 COA 25, ¶ 2, 277 P.3d 885 ( Kowalchik I ); see also §§ 38-30.5-101 to - 111, C.R.S. 2016 (establishing the purposes and requirements for CEs). CEs are fashioned to protect qualifying conservation values that exist on the property. §§ 38-30.5-101 to - 111, C.R.S. 2016.
¶ 8 In Colorado, a taxpayer may claim a state income tax credit for a qualifying CE to a government entity or charitable organization, and that credit may be carried forward for up to twenty years. § 39-22-522(5)(a) C.R.S. 2016. Further, the holder of a CE may transfer all or a portion of a CE tax credit to one or more transferees. § 39-22-522(7), C.R.S. 2016. However, only one such *208 transfer is permissible. See Markus , ¶ 23 ("A credit can be transferred only once. A transferee, to whom a credit is transferred, cannot thereafter transfer the credit to another taxpayer." (quoting Dep't of Revenue Reg. 39-22-522(3)(b), 1 Code Colo. Regs. 201-2 (2014))). When a transfer occurs, both the donor and the transferee are "taxpayers" subject to liability for deficiencies, interest, and penalties if the tax credit is disallowed. See Kowalchik I , ¶ 2.
¶ 9 The Medveds contend that they are not bound by the same statute of limitations as Whites Corp., and that under Markus the first claim filed triggers the four-year statute of limitations under § 39-21-107(2), C.R.S. 2006. They further contend that the General Assembly "changed" rather than "clarified" the applicability of the statute of limitations when, as relevant here, it amended the last sentence of § 39-22-522(7)(I) in 2007 to read: "The transferee shall be subject to the same statute of limitations with respect to the credit as the transferor of the credit." Ch. 290, sec. 3, § 39-22-522, 2007 Colo. Sess. Laws 1230. They argue that this change is prospective and not applicable to them.
¶ 10 In contrast, the Department contends that §§ 39-21-107(2) and 39-22-522(7)(i), C.R.S. 2006, when read together, subject the donor and the transferee to the same four-year statute of limitations. Relying on its internal regulations, the Department contends that Whites Corp., as the donor and tax matters representative (TMR), binds the Medveds, and it construes § 39-22-522(7)(i), C.R.S. 2006, as requiring that the donor's tax claim trigger the statute of limitations. See Dep't of Revenue Reg. 39-22-522(3)(b), 1 Code Colo. Regs. 201-2 (stating that the donor, as the TMR, binds the transferee). It argues that its regulations do not work in reverse and thus, that the Medveds cannot similarly bind Whites Corp. to a different statute of limitations.
¶ 11 We agree with the Department that a donor and transferee are considered a single entity under the statute and are bound by the same statute of limitations. This issue was decided by Markus . See Markus , ¶ 23. We further agree that the 2007 amendment to the last sentence of § 39-22-522(7)(I) clarified rather than changed that requirement, an issue also decided by Markus . See Markus , ¶ 34. However, as explained below, we reject the Department's argument that only the donor's tax claim begins the four-year statute of limitations and conclude, consistent with Markus , that the "entity's" first claim filed, whether it is the donor's or the transferee's, commences this limitations period.
III. Statutory Interpretation
¶ 12 We review a summary judgment de novo. Brodeur v. Am. Home Assurance Co. , 169 P.3d 139, 146 (Colo. 2007). Summary judgment is a drastic remedy and, therefore, is only appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c) ; Sanchez v. Moosburger , 187 P.3d 1185, 1187 (Colo. App. 2008).
¶ 13 Statutory interpretation is a question of law that we review de novo. Smith v. Exec. Custom Homes , 230 P.3d 1186, 1189 (Colo. 2010). We must adopt a construction that "best effectuates the intent of the General Assembly and the purposes of the legislative scheme." State v. Nieto , 993 P.2d 493, 501 (Colo. 2000). When construing a statute, we look first to the plain language of the statute and give words and phrases their ordinary meanings. Fischbach v. Holzberlein , 215 P.3d 407, 409 (Colo. App. 2009). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Id. (quoting Robinson v. Shell Oil Co. , 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) ).
¶ 14 If statutory language is clear and unambiguous, there is no need to resort to interpretive rules of statutory construction. Seaman v. Colo. Manufactured Hous. Licensing Bd. , 832 P.2d 1041, 1042 (Colo. App. 1991). But, if a statute is ambiguous, a court may examine its legislative history to discern legislative intent. UnitedGuar. Residential Ins. Co. v. Dimmick , 916 P.2d 638, 641 (Colo. App. 1996). A statute should be construed, wherever possible, "in a manner that gives effect to all its ... policy objectives, and not *209 in a way that renders one or more of its ... goals inoperative." Copeland v. MBNA Am. Bank, N.A. , 907 P.2d 87, 90 (Colo. 1995). A court must avoid any interpretation that leads to an absurd result. Concerned Parents of Pueblo, Inc. v. Gilmore , 47 P.3d 311, 313 (Colo. 2002).
¶ 15 Because the parties agree that § 39-21-107(2), C.R.S. 2016, permits the Department to challenge a taxpayer's filing for a period of four years from the filing date, and because they agree that Markus requires the Department to challenge a CE tax credit within four years from the date the credit is first claimed, we focus our analysis on the meaning of § 39-22-522(7)(i), C.R.S. 2006, and its application to their respective tax filings. The statute provides:
The donor of an easement for which a tax credit ... transferred pursuant to this subsection (7) shall be the [TMR] in all matters with respect to the credit. The [TMR] shall be responsible for representing and binding the transferees with respect to all issues affecting the credit, including, but not limited to, the charitable contribution deduction, the appraisal, notifications and correspondence from and with the department of revenue, audit examinations, assessments or refunds, settlement agreements, and the statute of limitations.
¶ 16 It applies to "income tax years commencing on or after January 1, 2000." § 39-22-522(2), C.R.S. 2006. While the statute's language makes the donor the TMR and states that the TMR and transferee are bound with respect to all issues affecting the credit, it does not specify whether the donor's or the transferee's tax filing claiming the CE credit begins the four-year statute of limitations period. See Markus , ¶ 25 ("Intuitively, it would seem that a tax credit transferee could not 'share' the donor's limitations period if ... the two could be subject to different limitation periods depending on when they filed their tax returns."). Accordingly, we conclude that the plain language of the statute is subject to two possible interpretations and is therefore ambiguous.
¶ 17 Under one view-the view urged by the Department-only the donor, as the TMR, could begin the statute of limitations by filing its first tax claim. In circumstances where a transferee filed a tax claim before the donor, however, the statute of limitations for reviewing the transferee's claim would not begin until the filing of the donor's first tax claim.
¶ 18 Under another view, the transfer of the CE tax credit would bind the donor and transferee into a single entity, and the "entity's" first tax filing would begin the statute of limitations. See Kowalchik v. Brohl , 2012 COA 49, ¶ 23, 411 P.3d 681, 2012 WL 7990628 ( Kowalchik II ) ("The transfer of a CE credit creates a pre-litigation relationship between the TMR and its transferee, in which their interests are closely aligned in upholding the validity of the CE credit and the TMR is motivated to defend the credit."). Because both interpretations are reasonable, we look to the statute's purpose, its legislative history, and to the consequences of particular constructions. Nieto , 993 P.2d at 500-501 ; see also § 2-4-203(1)(a), (c), & (e), C.R.S. 2016.
¶ 19 The CE tax credit statute serves two purposes: "(1) to incentivize donation of CEs for the public welfare; and (2) to provide pecuniary relief for land-rich, cash-poor individuals." Markus , ¶ 27 (citation omitted); see also Jessica E. Jay, Changes to Colorado's Conservation Income Tax Credit Law , 32 Colo. Law. 65, 65 (Feb. 2003) (describing the financial benefits to both donors and transferees of CE tax credits and how such credits provide a source of income to Colorado's land-rich but cash-poor farmers and ranchers). Because, as noted above, the donor and the transferee are subject to liability for any reduction or disallowance of the tax credit, the transferee has an interest in purchasing credits that carry a low risk of disallowance by the Department. See Kowalchik II , ¶ 23 (noting that to avoid this risk, donors and transferees often execute agreements allowing the transferee to seek indemnification from the donor for disallowances by the Department). To allow a transferee's statute of limitations to be tolled until the donor's first claim is filed would create a period of uncertainty and thus, a disincentive for buyers of these credits, contrary to the purpose of the *210 statute. Markus , ¶ 30 ; cf. Sierra Pac. Indus., Inc. v. Bradbury , 2016 COA 132, ¶ 26, 409 P.3d 551, 2016 WL 4699116 (construing a statute of repose to further the goal of relieving contractors and subcontractors from the prospect of potential indefinite liability for their acts or omissions). Indeed, potentially, a transferee could claim a CE tax credit in the year of transfer, while a donor could wait to claim the credit up to twenty years later. In this scenario, the transferee's statute of limitations would be tolled for twenty years, thereby creating uncertainty about the validity of the credit, which would result in a disincentive for future buyers of CE credits.
¶ 20 This view is supported by the legislative history of § 39-22-522(7)(I), which was discussed in Markus . In 2005, the General Assembly enacted § 39-22-522(7)(I) to "ensure that the Department would have only one taxpayer with whom to address the question of value and validity of the credit" in cases involving both a donor and a transferee. Markus , ¶ 31 (citing Hearing on H.B. 05-1244 before the S. Finance Comm., 65th Gen. Assemb., 1st Sess. (Mar. 17, 2005) (comments of bill sponsor Sen. Jennifer Veiga)). Consistent with this portion of the legislative history and Markus , we conclude that when a CE tax credit is transferred, the donor and the transferee become a single entity under § 39-22-522(7)(i), C.R.S. 2016, and that the Department then has a single taxpayer with whom to address questions concerning the value and the validity of the CE. Accordingly, we reject the Medveds' argument that the donor and transferee should be treated separately and are subject to separate statutes of limitations.
¶ 21 In discussing how far back the Department should be able to review the validity of CE credits, Representative Mike May recognized the general four-year statute of limitations and expressed his concern that the Department's review should not "somehow ... [go] on forever." Markus , ¶ 32 (quoting Hearing on H.B. 05-1244 before the H. Finance Comm., 65th Gen. Assemb., 1st Sess. (Feb. 16, 2005) (comments of Rep. Mike May)). Representative May expressed the view that taxpayers should be "home free" at some point after which they would no longer have to worry about the validity of their credits. Id. (quoting Hearing on H.B. 05-1244 before the H. Finance Comm., 65th Gen. Assemb., 1st Sess. (Feb. 16, 2005) (comments of Rep. Mike May)).
¶ 22 Based on the statute's purposes and its legislative history, the Markus division concluded the General Assembly did not intend the statute of limitations to restart each time a CE credit was claimed because the Department could potentially disallow a CE credit claimed twenty-four years earlier. Such a result, it reasoned, would contravene the statutory purposes. Id. at ¶ 35.
¶ 23 For similar reasons, we conclude that when the transferee files a tax claim first, the General Assembly did not intend for the donor's tax filing to begin the statute of limitations because a donor could potentially delay claiming the credit and thereby toll the transferee's statute of limitations period for up to twenty years. Such a scenario would undermine the statute's purposes and render an absurd result.
¶ 24 Instead, we believe the General Assembly intended the "entity's" first tax filing to begin the four-year statute of limitations period. Since the "entity" consists of both the donor and the transferee under § 39-22-522(7)(i), C.R.S. 2016, the first claim filed, by either the donor or the transferee, begins the four-year statute of limitations period. See Markus , ¶ 45. This interpretation comports with the purposes of the statute and its legislative history while providing certainty to both taxpayers and the Department. Taxpayers will know that the statute of limitations will accrue with the filing of the first claim and will have a date certain beyond which they are "home free." Furthermore, the Department will know that the first claim filed permits it to begin reviewing the validity and value of the claimed CE tax credit. See § 39-21-103, C.R.S. 2016 (the Department is obliged to review returns "[a]s soon as practicable.").[3]
¶ 25 We recognize that the Department's regulations state that transferees are bound *211 by the donor's statute of limitations. See Dep't of Revenue Reg. 39-22-522(3)(g)(viii), 1 Code Colo. Regs. 201-2. We further acknowledge our duty to accord due deference to the interpretation of a statute by the agency charged with its enforcement. See Heinicke v. Indus. Claim Appeals Office , 197 P.3d 220, 222 (Colo. App. 2008). However, because an agency's view of the law is advisory and not binding on a court, we are not bound by an agency's interpretation that is inconsistent with the clear language of, or the legislative intent underlying, the statute. Id. For the reasons stated above, we conclude the Department's regulation is inconsistent with the purposes and legislative history of the statute.
¶ 26 We also reject the Department's argument that it would be unable to commence review of the CE tax credit based on the transferee's tax filing because it would not have the donor's "confirming documentation" to match the credits under § 39-22-522(7)(d), C.R.S. 2016. Contrary to this argument, § 39-22-522(3) requires a taxpayer claiming a CE credit to file a qualified appraisal with the tax return claiming the credit.[4] And, we note that the Medveds provided substantial documentation of the CE, including the appraisal and a property description, with their tax return.
¶ 27 Furthermore, § 39-22-522(3.5) C.R.S. 2016 permits the Department "to [request] additional information from the taxpayer or transferee regarding the appraisal value of the easement, the amount of the credit, and the validity of the credit." Therefore, we conclude that the Department receives sufficient information with the first claim filed to determine the tax credit's validity and value, irrespective of whether that claim is the donor's or the transferee's. Moreover, the Department may request from either the donor or the transferee any additional information that it requires to address the validity and value of the CE tax credit with one taxpayer. Markus , ¶ 31.
IV. Application
¶ 28 Applying our interpretation of the statute to this case, we conclude that the Department had four years from October 23, 2006, to determine the validity and value of the CE tax credit claimed by the Medveds. Because the Department's notice of disallowance sent on March 4, 2011, was beyond the four-year limitations period, the Department's disallowance is untimely and statutorily barred.
V. Conclusion
¶ 29 We reverse the district court's judgment in favor of the Department and remand to the district court for dismissal of this action.
JUDGE ROMÁN and JUDGE LICHTENSTEIN concur.

The 2006 version of § 39-22-522(7)(I) is at issue here. The statute was amended in 2007. We reference the 2016 statutes if the sections cited were not altered by the 2007 amendment.

Alan DeAtley, the individual who formed Whites Corp., was part of a tax credit fraud scheme and was prosecuted criminally. Whites Corp. and the Medveds stipulated to the invalidity of the $130,000 tax credit. Resolution of the statute of limitations issue determines whether penalty payments associated with the disallowance are due.

In reaching this conclusion, and for the reasons set forth in Markus , we also conclude that the 2007 amendment to the last sentence of § 39-22-522(7)(I) clarified that the donor and transferee are subject to the same statute of limitations. See Markus v. Brohl , 2014 COA 146, ¶ 34.

Subsequent statutory amendments now require the filing taxpayer to provide substantial documentation with its first tax return claiming a CE credit, including information about how the credit was claimed on the federal tax return; a copy of a certified appraisal; a statement of the purposes of the easement and the protections afforded, including the number of acres subject to the easement, the amount of the credit claimed, and the name of the organization holding the easement; a sworn affidavit from the holder of the easement; and the recorded deed for the CE. See § 39-22-522(3)(a)-(f), (3.6), C.R.S. 2016.