Opinion by JUDGE WEBB
¶ 1 In this tax dispute, defendants, the Department of Revenue of the State of Colorado (Department) and Barbara Brohl, in her official capacity as the Executive Director of the Department (Director), appeal the district court's summary judgment in favor of plaintiff, Oracle Corporation (Oracle). The district court held that Oracle could not be required to include Oracle Japan Holding, Inc. (OJH), a wholly owned domestic subsidiary holding company, in its Colorado combined corporate income tax returns for the tax years 2000 to 2005, because OJH was not includable under section 39-22-303(12)(c), C.R.S. 2017. The court also rejected the Department's assertion that it could require Oracle to include OJH or otherwise tax a portion of OJH's income under section 39-22-303(6), allegedly to prevent tax abuse. In so holding, however, the court rejected Oracle's alternative argument that OJH was not includable under section 39-22-303(11)(a). Oracle cross-appeals this portion of the summary judgment order. Neither party disputes preservation of any issue nor argues that summary judgment was improper because of a disputed issue of material fact.
¶ 2 We affirm the summary judgment against defendants and on that basis dismiss the cross-appeal as moot.
I. Background and Procedural History
¶ 3 Oracle, a Delaware corporation headquartered in California, is the parent of a worldwide group of affiliated corporations.
*950 Oracle Corporation Japan (Oracle Japan), formed in 1985, is a foreign subsidiary operating exclusively within Japan. OJH, formed in 1991, holds stock in Oracle Japan. In the tax year ending (TYE) May 31, 2000, OJH sold 8.7 million shares of Oracle Japan stock on the Tokyo Stock Exchange for a gain of $6.4 billion (OJH Gain).
¶ 4 Following an audit of Oracle's Colorado income tax returns for TYEs May 31, 2000, through May 31, 2005, the Department issued an assessment that Oracle owed Colorado income tax on the OJH Gain. Oracle protested this assessment. The Director issued a corrected final determination upholding the assessment. Oracle timely commenced this action challenging it.
II. Overview of Colorado Corporate Income Tax Law
¶ 5 A "C corporation" is "any organization taxed as a corporation for federal income tax purposes." § 39-22-103(2.5), C.R.S. 2017. Large businesses often function through multiple, related C corporations, interconnected in complex ways, operating to various degrees inside Colorado, in other states, and sometimes in foreign countries.
¶ 6 A state's taxing power is constitutionally limited to the income of a corporation, or a group of affiliated corporations, that is attributable to activities within the state. Allied-Signal, Inc. v. Dir., Div. of Taxation , 504 U.S. 768, 777, 112 S.Ct. 2251, 119 L.Ed.2d 533 (1992). In other words, states may tax a unitary business based on an apportioned share of the multistate activities carried on in the taxing state. Id. at 778, 112 S.Ct. 2251. Colorado taxes the income of a C corporation from tangible or intangible property located or having a situs in this state, as well as the income from any activities carried on in this state, regardless of whether such activities are also part of interstate or even foreign commerce. § 39-22-301(1)(d)(II), C.R.S. 2017.
¶ 7 To calculate the taxable income of affiliated C corporations attributable to Colorado, the Department applies the "unitary apportionment" accounting method, which has been upheld by both the Supreme Court and Colorado Supreme Court. As explained in Hewlett-Packard Co. v. Department of Revenue , 749 P.2d 400, 401 (Colo. 1988) :
The ... unitary apportionment [method] is based on a recognition that an integrated business may operate through several separately incorporated entities. In such case, transactions between corporations under common control may lack economic substance; therefore, it is necessary to consider the corporate group as a whole. This method combines the income of all related business entities which are engaged in the same integrated or unitary business to arrive at a net income base. A percentage of this net income base is then apportioned to the relevant taxing jurisdiction according to a formula which measures the contribution of the business activities within the taxing jurisdiction (e.g., Colorado) to the profit of the entire unitary business. This percentage of the net income base, rather than the entire net income base, is then taxed by the state.
¶ 8 Section 39-22-303 contains rules for determining which related C corporations the Director may require be included in a "combined report"[1] for the purpose of income taxation. Three subsections are relevant.
• Section 39-22-303(8) provides that the Director shall not require a corporation "which conducts business outside the United States" to be included in a combined report "if eighty percent or more of the C corporation's property or payroll, as determined by factoring pursuant to section 24-60-1301, C.R.S., is assigned to locations outside the United States."
• Section 39-22-303(11)(a) allows the Director to require, and the taxpayer to file, a combined report for an affiliated group of C corporations, but only to the extent that members of the affiliated group satisfy at least three of six factors.[2]
*951 • Section 39-22-303(12)(c) clarifies that for purposes of subsection 303(11), an "affiliated group" of an includible C corporation is "any C corporation which has more than twenty percent of the C corporation's property and payroll as determined by factoring pursuant to section 24-60-1301, C.R.S., assigned to locations inside the United States."
¶ 9 Apart from these combined reporting rules, section 39-22-303(6) provides:
In the case of two or more C corporations, whether domestic or foreign, owned or controlled directly or indirectly by the same interests, the executive director may, to avoid abuse, on a fair and impartial basis, distribute or allocate the gross income and deductions between or among such C corporations in order to clearly reflect income.
III. The District Court's Summary Judgment Order
¶ 10 The parties filed cross-motions for summary judgment. In a thorough and well-reasoned order, the district court articulated three principal rulings.
• The parties agree that Oracle and OJH met the common officers test in section 39-22-303(11)(a)(VI) for tax years 1998-2000. They dispute whether OJH satisfies the substantial use of intellectual property test in subsection 303(11)(a)(IV) and the common directors and officers test in subsection 303(11)(a)(V). The court concluded that OJH substantially used Oracle's trademarked name, although not in connection with the sale of goods and services. It further concluded that the common directors and officers test was met as to one director of OHJ who also held an officer title at Oracle, even though he had never been appointed an officer by Oracle's board, as its bylaws required.
• Although section 39-22-303(12)(c) allows a C corporation that has less than twenty percent of its property and payroll inside the United States to be excluded from a parent corporation's combined tax return, it does not address a holding company such as OJH, which has no property or payroll of its own, inside or outside the United States. But according to Department of Revenue Regulation 39-22-303.12(c), 1 Code Colo. Regs. 201-2, "[s]ince corporations that have no property or payroll factors of their own cannot have twenty percent or more of their factors assigned to locations in the United States, such corporations, by definition, cannot be included in a combined report." While the statute may be ambiguous, in the court's view, "Regulation 12(c) is directly applicable to the facts of this case." The court concludes, "OJH is not an includable C corporation under [sub]section 303(12)(c), and the Department erred when it required the inclusion of OJH in Oracle's Colorado combined return."
• Section 39-22-303(6) did not provide the Department with an alternative method of allocating income apart from the combination of affiliated corporations required by subsections (11)(a) and 12(c).
¶ 11 For these reasons, the court entered summary judgment in favor of Oracle.
IV. Appellate Review and Statutory Interpretation
¶ 12 An appellate court reviews a district court's summary judgment de novo. Medved v. State , 2016 COA 157, ¶ 12, 411 P.3d 206. "Summary judgment is a drastic remedy and, therefore, is only appropriate where there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." Id. ; see C.R.C.P. 56(c).
¶ 13 Statutory interpretation is also a question of law subject to de novo review. Colo. Dep't of Revenue v. Creager Mercantile Co., Inc. , 2017 CO 41M, ¶ 16, 395 P.3d 741. Familiar standards inform that process.
*952 ¶ 14 "When construing a statute, we must ascertain and give effect to the intent of the General Assembly. To determine legislative intent, we look first to the plain language of the statute. When the statutory language is clear and unambiguous, 'we look no further and apply the words as written,' " without resorting to legislative history or further rules of statutory construction. Id. (citations omitted); see also Smith v. Exec. Custom Homes, Inc. , 230 P.3d 1186, 1189 (Colo. 2010). As part of de novo review, a court may consider and even defer to an agency's interpretation of the statute, although it is not bound by the agency's interpretation. BP Am. Prod. Co. v. Colo. Dep't of Revenue , 2016 CO 23, ¶ 15, 369 P.3d 281. But in interpreting Part 3 of Article 22, the Director's administrative interpretations "shall be given no greater weight than the interpretation of the taxpayer ... unless such administrative interpretation or construction is set forth in rules and regulations promulgated by the executive director." § 39-22-310, C.R.S. 2017. As well, "[d]eference is not warranted where the agency's interpretation is contrary to the statute's plain language." BP Am. Prod. Co. , ¶ 15.
¶ 15 Generally, a court resolves all doubts regarding the language in a tax statute in favor of the taxpayer. Id. at ¶ 16. Deductions and exemptions are not allowed, however, unless they are clearly provided for in the statute. Id.[3]
V. OJH Is Not an Includible C Corporation Under the Test in Section 39-22-303(12)(c)
¶ 16 The Department contends the district court erred when it held that OJH was not an includible C corporation under section 39-22-303(12)(c), but it does not assert that this section is ambiguous. We agree with the district court's conclusion, but do not share the court's view that the statute is ambiguous.
¶ 17 Applying the plain language of section 39-22-303(12) involves the following steps.
• To begin, the Director's power under subsection 303(11) to require a combined report applies only to "an affiliated group of C corporations."
• Subsection 303(12)(a) limits the phrase "affiliate group," as used in subsections 303(10) and (11), to "includable C corporations" having certain characteristics.
• And as relevant here, subsection 303(12)(c) defines "includable C Corporations" as any corporation that has "more than twenty percent of the C Corporation's property and payroll" assigned to locations inside the United States.
Therefore, because OJH is not an includable C corporation, it cannot be a member of an affiliated group, and in turn falls outside of the Director's power to require its inclusion in a combined report.
¶ 18 Even so, this application of subsection 303(12)(c) must survive two challenges.
¶ 19 First, as the district court recognized, subsection 303(12) does not address whether a corporation like OJH-a holding company that has no tangible property or payroll of its own, anywhere-must be included in or may be excluded from a combined report. If this silence renders the subsection ambiguous, then interpretation must begin with deciding whether it is a tax imposition or a tax exemption statute and also consider legislative history.
¶ 20 Second, everyone agrees that OJH is a domestic corporation which does not "conduct[ ] business outside the United States," the phrase that limits the Director's power to require inclusion in a combined report under subsection 303(8). According to the Department, because the following subsections also concern the scope of combined reports, they should be read in pari materia as applying *953 only to C corporations that conduct business outside the United States.
¶ 21 Neither challenge requires a different result.
¶ 22 Beginning with ambiguity, "[a] statute is ambiguous when its meaning is uncertain because of 'silence' in the statutory language." People v. Mosley , 397 P.3d 1122, 1126 (Colo. App. 2011), aff'd , 2017 CO 20, 392 P.3d 1198. But not always. "If, however, a statute can be construed and applied as written, the [General Assembly's] silence on collateral matters is not this court's concern." In re 2000-2001 Dist. Grand Jury , 97 P.3d 921, 924 (Colo. 2004). Indeed, because "a statute's silence on a particular issue easily could be used to manufacture ambiguity where none exists in practically any case involving statutory construction," judicial restraint may be prudent. Robbins v. People , 107 P.3d 384, 393 (Colo. 2005) (Rice, J., dissenting).
¶ 23 The lack of reference in section 39-22-303(12)(c) to holding companies that lack property and employees does not create an ambiguity with respect to its reach. Rather, the test for inclusion remains unambiguous: twenty percent or more of the C corporation's property and payroll must be assigned to locations inside the United States. Because twenty percent of zero is zero, a corporation without property or payroll meets this test. See Kauntz v. HCA-Healthone, LLC , 174 P.3d 813, 819 (Colo. App. 2007) ("While we can envision how the statute could have more explicitly prohibited patient claims, it is nevertheless clear as to its intended scope, and thus is not ambiguous.").
¶ 24 The Department's own regulation 39-22-303.12(c), in effect since 1994, supports this conclusion. It reads:
Corporations without property and payroll factors.
C.R.S. 39-22-303(12)(c) provides that only those corporations whose property and payroll factors are assigned twenty percent or more to locations inside the United States may be included in a combined report. Since corporations that have no property or payroll factors of their own cannot have twenty percent or more of their factors assigned to locations in the United States, such corporations, by definition, cannot be included in a combined report.
Dep't of Revenue Reg. 39-22-303.12(c), 1 Code Colo. Regs. 201-2 (emphasis added). To the extent that this regulation filled a statutory gap,
[i]f [the General Assembly] has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.
Wine & Spirits Wholesalers of Colo., Inc. v. Colo. Dep't of Revenue, Liquor Enf't Div. , 919 P.2d 894, 897 (Colo. App. 1996) (quoting Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc. , 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ).
¶ 25 Despite this plain language, the Department argues that the regulation was intended to apply only to foreign sales corporations (FSCs), which are foreign subsidiaries of American corporations with a physical presence in a foreign country but not necessarily any foreign property or payroll. However, the regulation does not refer to FSCs. Nor does the statute.
¶ 26 When the meaning of a statute is disputed, the agency's own interpretation carries great weight, unless it is inconsistent with the regulation itself. Cendant Corp. v. Dep't of Revenue , 226 P.3d 1102, 1109 (Colo. App. 2009). Because regulation 39-22-303(12)(c) does not mention FSCs, the regulation is consistent with the statute.
¶ 27 Department of Revenue Bulletin 92-10, 1992 WL 532154, on which the Department relies, does not support the FSC limitation. True, the bulletin stated in relevant part:
In those situations where a corporation has no property or payroll of its own (e.g., Foreign Sales Corporations ), but which functions through the use of the personnel services and/or property of an includable corporation, it is the Department's position *954 that such corporations are not to be included in a combined report.
(Emphasis added.) But "e.g." means "for example." Hatfield v. Bd. of Supervisors, 235 So.3d 18, 29, 2017 WL 3452426, at *10 (Miss. 2017). So, the reference to FSCs is not restrictive.
¶ 28 And the Department's reliance on 1990 testimony from one its representatives also falls short. When asked what would happen if the General Assembly did not extend the then-existing regulation, the Department's spokesperson responded: "It would necessitate an amount, a great amount, I would say, of time and effort on behalf of the, all the corporations that have these Foreign Sales Corporations, to amend their returns." Hearing on Various Regulations Before the Comm. on Legal Servs., 57th Gen. Assembly, 2d Reg. Sess. (Nov. 1990) (statement of Ron Granner).
¶ 29 But in 1990, the Office of Legislative Legal Services (OLLS) reviewed earlier Department of Revenue regulations interpreting section 39-22-303(8) and (12)(c). Those regulations provided that corporations without property and payroll of their own were to be considered includible in combined returns. In a memorandum to the General Assembly's Committee on Legal Services, the OLLS wrote that these regulations conflicted with the definition of "includible corporations" set forth in section 39-22-303(12)(c), and thus impermissibly modified the statutory language. The General Assembly followed the OLLS recommendation and voted against extending these regulations, which allowed them to expire in June 1991.
¶ 30 Undaunted, the Department further argues that despite the parties' agreement OJH has no property or payroll of its own, OJH must have used Oracle's property to perform its corporate functions. Thus, according to the Department, OJH would meet the 80/20 test for inclusion in subsection 303(12)(c) because by using Oracle's property, it is deemed to have only domestic property and payroll. But the district court concluded that "the Department has made an insufficient showing on this issue" because "OJH's theoretical use of Oracle's property does not create a disputed issue of fact with respect to the 80/20 calculation." The Department does not cite to anything in the record supporting such actual use, other than de minimus activity covered by the master services agreement. And according to Bulletin 92-10, 1992 WL 532154, a corporation "which functions through the use of personnel services and/or property of an includable corporation ... [is] not to be included in a combined report."
¶ 31 In sum, we apply subsection 303(12)(c) as did the district court, but based on its plain language.
¶ 32 Turning to the phrase "conduct[ ] business outside the United States" in subsection 303(8), that phrase does not appear in any following subsection. Nor does the Department identify any regulation saying that it impliedly limits subsection 303(10), 303(11), or, as most relevant, subsection 303(12). And at oral argument, the Department agreed that the legislative history does not explain the absence of this phrase from these three subsections.
¶ 33 Instead, the Department points to descriptions of so-called water's edge corporations-those that have some domestic but primarily foreign operations-as well as references to construing the subsections of section 39-22-303 similarly in the legislative history. But "[w]here the statutory language is clear and unambiguous, we do not resort to legislative history or further rules of statutory construction." Smith , 230 P.3d at 1189. And we have already concluded that subsection 303(12)(c) is unambiguous.
¶ 34 Of course, "[i]f a statute potentially conflicts with another statute, a court must attempt to harmonize them to effectuate their purposes." People v. Hampton , 876 P.2d 1236, 1240 (Colo. 1994). But declining the Department's invitation to read "conducts business outside the United States" from subsection 303(8) into the following subsections does not create disharmony. Rather, subsection 303(8) prohibits the Director from requiring combined reporting of water's edge C corporations that have eighty percent or more foreign activities, measured by property and payroll. Subsection 303(11) allows the Director to require combined reporting of C
*955 corporations-regardless of the situs of their activities-that meet specific criteria. And subsection 303(12)(c) limits that power to C corporations having more than twenty percent domestic activities, again measured by property and payroll.
¶ 35 "The primary task in statutory interpretation is to determine and effectuate legislative intent by construing the statute as a whole." Burnett v. State Dep't of Nat. Res. , 2015 CO 19, ¶ 12, 346 P.3d 1005. Reading these provisions together, we see that
• subsection 303(8) immunizes water's edge C corporations that fail the 80/20 test for inclusion from mandatory combined reporting; and
• subsection 303(12)(c) exposes all C corporations to combined reporting-in the Director's discretion under subsection 303(11)-that fail the 80/20 test.
Thus, the provisions do not conflict because a water's edge C corporation would be treated the same under subsection 303(8) as it would be under subsection 303(12)(c).
¶ 36 Also, a court should "strive to avoid statutory interpretations that render certain words or provisions superfluous or ineffective." Kinder Morgan CO2 Co., L.P. v. Montezuma Cty. Bd. of Comm'rs , 2017 CO 72, ¶ 24, 396 P.3d 657. Were we to read "conducts business outside the United States" into subsection 303(12)(c), then its limitation on the Director's power under subsection 303(11) would merely repeat the prohibition in subsection 303(8). A C corporation that has "eighty percent or more" foreign property and payroll, per subsection 303(8), cannot have more than twenty percent domestic property and payroll, per subsection 303(12)(c). Stated differently, the outcome would be the same, because one test is merely the reciprocal of the other.
¶ 37 Still, the question could be asked why the General Assembly would have restated the 80/20 test in subsection 303(12)(c), when C corporations that have only domestic operations will always be included, and thereby be subject to combined reporting under subsection 303(11), unless as here they have no property or payroll. But even if a plain language interpretation "may create an unintended result, the [General Assembly] or the people must determine the remedy, and we are not a board of editors with power to rewrite statutes or the constitution to improve them." McGihon v. Cave , 2016 COA 78, ¶ 11, 410 P.3d 647.
¶ 38 In the end, we leave "conducts business outside the United States" where the General Assembly put it, in only subsection 303(8).
¶ 39 Finally, the Department's assertion that excluding OJH from mandatory combined reporting creates an absurd result misses the mark in two ways.
¶ 40 First, the Department does not cite authority, nor have we found any in Colorado, defining absurd. In the statutory context, it has been defined narrowly as "an interpretation that would lead to an unconscionable result, esp[ecially] one that ... the drafters could not have intended and probably never considered." Black's Law Dictionary 10 (9th ed. 2009). In turn, unconscionable is defined as "affronting the sense of justice, decency, or reasonableness." Id. at 1664. See also Evans Withycombe, Inc. v. W. Innovations Inc. , 215 Ariz. 237, 159 P.3d 547, 550 (Ariz. Ct. App. 2006) ("An absurd result is one 'so irrational, unnatural, or inconvenient that it cannot be supposed to have been within the intention of persons with ordinary intelligence and discretion.' ") (citation omitted).
¶ 41 Unsurprisingly, to preserve the separation of powers, courts must approach rejecting a statute's plain language to avoid creating an absurd result very cautiously. See, e.g. , Barrow v. City of Detroit Election Comm'n , 301 Mich.App. 404, 836 N.W.2d 498, 506 (2013) ("Our Supreme Court, however, has commented that the absurd results 'rule' of construction typically is merely 'an invitation to judicial lawmaking.' ") (citation omitted); Alejos v. State , 433 S.W.3d 112, 121 (Tex. App. 2014) ("[T]he 'absurd results' concept is not an open invitation for courts to second-guess legislative policy decisions in the guise of 'construing' statutes, but a check against blindly narrow and out-of-context readings of statutory language that the [General Assembly] could not possibly have meant."). See also 2A Norman J. Singer, Statutes and Statutory Construction § 46:07, *956 at 199 (6th ed. 2000) ("[T]he absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the [General Assembly] could not have meant what it unmistakably said.") (footnote omitted).
¶ 42 The Department does not cite to any evidence supporting its speculation that other corporate taxpayers could reduce or avoid combined reporting by creating a chain of domestic holding companies. And in any event, the mere possibility that other taxpayers could seek to benefit from a plain language interpretation of section 38-22-303(12)(c) does not cross the high absurdity threshold. After all, taxation involves an ongoing cat and mouse game of taxpayers finding loopholes and the legislature closing them. See, e.g. , United States v. Carlton , 512 U.S. 26, 34, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994) (examining legislative history of tax statute to conclude that Congress intended to pass subsequent retroactive statute to close loophole in previous statute).
¶ 43 Second, according to the Department's answer-reply brief, "[a] ruling in Oracle's favor would open the door for all corporate taxpayers with domestic holding companies in their corporate structure to seek this beneficial tax treatment not intended by the General Assembly." But therein lies the problem. Since at least the inception of this case in 2015, the Department has been aware of Oracle's litigation position concerning section 38-22-303(12)(a). During the ensuing two years, it could have sought a legislative fix to the parade of horribles that it posits. At oral argument, the Department conceded that it has not yet done so.
¶ 44 For these reasons, we agree with the district court that section 39-22-303(12)(c) did not allow the Director to require that Oracle include OJH in its Colorado combined tax return.
VI. Section 39-22-303(6) Does Not Provide the Department with an Alternative Basis for Taxation of OJH's Income
¶ 45 The Department next contends the district court erred when it ruled, as a matter of law, that section 39-22-303(6) could not be applied as an alternative basis for including income of OJH in Oracle's tax return. It also contends the economic substance doctrine should guide the application of section 39-22-303(6). We reject the first contention and therefore do not reach the second contention.
¶ 46 Section 39-22-303(6), quoted in full above, authorizes the Department to allocate income and deductions among corporations that are owned or controlled by the same interests, "to avoid abuse, on a fair and impartial basis," so as "to clearly reflect income."
¶ 47 The district court held that section 39-22-303(6) could be applied to allocate income among affiliated corporations only if those corporations were otherwise includible under section 39-22-303(12)(c). It relied on the Department's regulation 39-22-303.6, which states:
Even though subsection 39-22-303(6), C.R.S. has been superseded by subsection 39-22-303(11), C.R.S., as a vehicle for requiring combined reporting for affiliated C corporations, subsection 39-22-303(6) is still available for use by the Department of Revenue or by the taxpayer for determining Colorado taxable income by use of methodology such as that contained in section 482 of the Internal Revenue Code in applying "arm's length pricing" procedures.
Dep't of Revenue Reg. 39-22-303.6, 1 Code Colo. Regs. 201-2. The court explained, "Allowing the Department to use 303(6) in this manner would give the Department broad authority beyond that delegated in the state's combined reporting statutory scheme outlined in sections 303(8) through 303(12), and largely would render these sections superfluous."
¶ 48 In addition, the court found that the purpose of the statute is to address "abuse leading to tax avoidance." Then it concluded that the record did not "indicate that Oracle's formation of OJH was an attempt to avoid paying state income taxes on the sale of Oracle Japan stock." Instead, "OJH was formed pursuant to the terms of a loan secured *957 by Oracle from Nippon Steel, an unaffiliated Japanese entity. Since its formation in 1991, OJH held stock in Oracle Japan before selling a portion of its shares in 2000 and realizing the gain at issue here." Thus, "there is no evidence of abuse to warrant the Department transferring OJH's income to Oracle."
¶ 49 We agree with the district court, both legally and factually.
¶ 50 Legally, the Department's reliance on section 39-22-303(6) is flawed in at least five respects.
¶ 51 First, "[u]pon enacting regulations, an agency is bound by them." Rags Over the Ark. River, Inc. v. Colo. Parks & Wildlife Bd. , 2015 COA 11M, ¶ 25, 360 P.3d 186 (collecting cases). And as the district court noted, according to the Department's regulation 39-22-303.6, "subsection 39-22-303(6), C.R.S. has been superseded by subsection 39-22-303(11)."
¶ 52 Second, while deference to the reasonable interpretations of the administrative agencies "is not warranted when the agency's interpretation is contrary to the plain meaning of the statute," Ybarra v. Greenberg & Sada, P.C. , 2016 COA 116, ¶ 28, --- P.3d ---- (cert. granted Feb. 27, 2017), we discern no such conflict. After all, the Department could still seek to apply section 39-22-303(6), except as to income of affiliated C corporations that are not includable in a combined report.
¶ 53 Third, despite our conclusion that OJH is not an includable C corporation based on the test in section 39-22-303(12)(c), under the guise of avoiding "abuse" the Department could impose the same tax as would have resulted from requiring Oracle to include OJH's income in a combined report. But such action would violate the principle that "the law may not be used to permit one to accomplish indirectly what he may not achieve directly." Salle v. Howe , 793 P.2d 628, 631 (Colo. App. 1990). Although our appellate courts have not applied this principle in the context of statutory interpretation, other jurisdictions have done so. See, e.g. , Spectrum Emergency Care, Inc. v. St. Joseph's Hosp. & Health Ctr. , 479 N.W.2d 848, 852 (N.D. 1992) ("Statutes should not be interpreted to allow persons to do indirectly something that the statute directly prohibits.").
¶ 54 Fourth, when interpreting statutes, "[s]pecific provisions control over general provisions." Bd. of Cty. Comm'rs v. Hygiene Fire Prot. Dist. , 221 P.3d 1063, 1066 (Colo. 2009) ; see also § 2-4-205, C.R.S. 2017. Sections 39-33-303(11) and (12) provide specific criteria for combined reporting. In contrast, section 39-22-303(6) contains only a general and undefined criterion: "to avoid abuse."
¶ 55 Fifth, "when interpreting more than one statute, we will favor a construction that avoids potential conflict between the relevant provisions." People v. Smith , 971 P.2d 1056, 1058 (Colo. 1999). Applying section 39-33-303(6) to trump section 39-33-303(11) and (12), in the Department's unfettered discretion, would create a conflict, as this case shows. In contrast, limiting section 39-33-303(6) to pricing procedures for certain intercompany transactions of the type "contained in section 482 of the Internal Revenue Code" would not. See 26 C.F.R. § 1.482-1(a) (2015).
¶ 56 Despite all this, the Department's opening brief asserts that our interpretation of section 39-22-303(12)(c), unless subject to discretionary enforcement action under section 39-22-303(6), may "encourage companies to avoid tax by inserting a holding company between the Colorado taxpayer and any otherwise includable operating subsidiaries." But this assertion begs the primary question raised in this case because it urges us to disregard the test for "includable" in section 39-22-303(12)(c). "[W]e are not empowered to ignore the plain meaning of statutory language." Matter of Title, Ballot Title & Submission Clause , 961 P.2d 1077, 1089 (Colo. 1998).
¶ 57 Factually, the Department fares no better.
¶ 58 Recall, section 39-22-303(6) does not define "abuse." Nor does the Department cite any case doing so in the taxation context.
¶ 59 "Courts may refer to dictionary definitions to determine the plain and ordinary meaning of undefined statutory terms."
*958 People v. Serra , 2015 COA 130, ¶ 52, 361 P.3d 1122. One definition of "abuse" is "to depart from legal or reasonable use." Black's Law Dictionary 10 (8th ed. 2004). Definitions of this word in Webster's Third New International Dictionary , p.8 (2002) include:
• "a corrupt practice or custom";
• "improper" or incorrect use; or
• "a deceitful act."
¶ 60 On the one hand, the record supports the district court's analysis that Oracle formed OJH for a reasonable business purpose, at the behest of an independent third party. On the other hand, the Department does not cite any evidence of corruption, impropriety, or deceit in Oracle's use of OJH. The Department's assertions that "Oracle treats Oracle Japan as a direct subsidiary," OJH "is merely a vehicle for Oracle's ownership of Oracle Japan," and a loan of the OJH Gain to another Oracle subsidiary "has been outstanding for over 15 years with no interest or principal paid" do not show corruption, impropriety, or deceit.
¶ 61 Even so, the Department challenges the district court's reference to "abuse leading to tax avoidance" on the basis that its discretionary power to reallocate income under the statute goes beyond circumstances involving "tax avoidance." True, the evolution of section 39-22-303(6) supports this broader view.
¶ 62 Under the predecessor statute,
In case of two or more businesses, whether or not incorporated, and whether or not organized in Colorado, owned or controlled directly or indirectly by the same interests the State Treasurer may distribute or allocate the gross income and deductions between or among such businesses or may require returns on a consolidated basis if deemed necessary in order to prevent evasion of taxes and clearly reflect the income.
Ch. 175, sec. 18, 1937 Colo. Sess. Laws 719 (emphasis added). In 1979, the statute was amended to omit the phrase "to prevent evasion of taxes." Ch. 373, sec. 34, § 39-22-303, 1979 Colo. Sess. Laws 1445. This change occurred before the General Assembly added section 39-22-303(8) - (12). Ch. 309, sec. 1, § 39-22-303, 1985 Colo. Sess. Laws 1273-76.
¶ 63 Given this change, while tax evasion may still be a sufficient basis for the Department to exercise its discretion under section 39-22-303(6), tax evasion is not a necessary condition for the Department to do so. In this way, our analysis departs from that of the district court. But this departure only returns to the plain and ordinary meaning of abuse. "We give statutory words and phrases their plain and ordinary meanings, and avoid forced, subtle, or strained constructions when the language is simple and the meaning clear." Subsequent Injury Fund v. Indus. Claim Appeals Office , 131 P.3d 1224, 1226 (Colo. App. 2006). And as indicated, the Department failed to present evidence creating a disputed issue of material fact that Oracle created or used OJH in a manner consistent with that plain and ordinary meaning.
¶ 64 Instead, the Department's opening brief urges that this case evinces abuse based on "[t]he improper use of the domestic unitary approach," which in its answer-reply brief morphs into "an abuse of the General Assembly's intended operation of Section 303-namely, as the statute enforcing a domestic unitary combined reporting system in Colorado." But the Department does not explain, nor can we discern, how failure to treat OJH in a manner that would conform to the General Assembly's intent constitutes abuse by Oracle. Were the General Assembly free to define abuse, then as Humpty Dumpty said, "it means just what I choose it to mean-neither more nor less." Lewis Carroll, Through the Looking Glass (1871).
¶ 65 The Department's position becomes even more perplexing given its concession that "Colorado limits its taxation of unitary businesses by exempting predominantly foreign corporations." In other words, had Colorado required combined reporting of all unitary corporate income, any failure to do so might constitute abuse. But because Colorado chose to exempt corporations that do not have twenty percent domestic property and payroll, the failure to report income of such a corporation cannot constitute abuse.
¶ 66 In sum, we agree with the district court that the Department cannot rely on *959 section 39-22-303(6). We leave for another day whether in a proper case the economic substance doctrine informs the application of section 39-22-303(6).
CROSS-APPEAL
VII. Whether OJH Satisfied Three of the Six Factors Required for Combination Under Section 39-22-303(11) Is Moot
¶ 67 Oracle contends the district court erred when it held that OJH satisfied three factors as required under section 39-22-303(11) for determining whether affiliated corporations constitute a unitary business. Oracle does not dispute that one test is satisfied: Oracle and OJH meet the common officers test in section 39-33-303(11)(a)(VI) for tax years 1998-2000. But Oracle does challenge the district's court's holding that OJH satisfies the substantial use of intellectual property test in section 39-22-303(11)(a)(IV) and the common directors and officers test in section 39-22-303(11)(a)(V).
¶ 68 Be that as it may, we have concluded that under section 39-22-303(12)(c), the Director cannot require Oracle to include OJH in a unitary or consolidated return. So, even were we to further conclude that the district court incorrectly resolved either or both disputed factors under section 39-22-303(11), Oracle would not be entitled to any additional relief. Thus, Oracle's cross-appeal is moot, a point that Oracle conceded at oral argument. See Trinidad Sch. Dist. No. 1 v. Lopez , 963 P.2d 1095, 1102 (Colo. 1998) ("An issue becomes moot when the relief granted by the court would not have a practical effect upon an existing controversy.").
VIII. Conclusion
¶ 69 The district court's judgment in favor of Oracle is affirmed.
JUDGE LICHTENSTEIN concurs.
JUDGE BERGER dissents.

Although "combined report" does not have a statutory definition, it appears to be synonymous with a consolidated return. § 39-22-655(3), C.R.S. 2017.

These factors address characteristics such as functional integration, centralization of management, and economies of scale, which have been recognized as bases for requiring combined reporting. See Container Corp. v. Franchise Tax Bd. , 463 U.S. 159, 178-79, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).

The Department argues that section 39-22-303(8) -(12), C.R.S. 2017, should be construed as creating a tax exemption, which would place the burden on Oracle to clearly establish the right to any claimed exemption for OJH. Oracle responds that because these statutes do not create exemptions, but rather involve tax imposition, they must be construed in its favor as the taxpayer. As our plain language review concludes that the statutes are unambiguous, we need not decide whether they create an exemption.